### McBRIDE et al. v. HOME INS. CO. et al.
### No. 2014.

United States District Court
E. D. Louisiana, New Orleans Division.
May 5, 1952.

Terriberry, Young, Rault & Carroll and Benjamin W. Yancey, all of New Orleans, La., for libelant.

Deutsch, Kerrigan & Stiles and Harry F. Stiles, Jr., all of New Orleans, La., for respondent.

WRIGHT, District Judge.

All other issues in this matter having been disposed of, the only remaining question is whether at the time of the loss of the Tug Bessemer on November 26, 1950 she was insured by respondent, Automobile Insurance Company of Hartford, Connecticut, in the amount of $3750 or in the amount of $1500. The court, after considering the evidence, the argument of counsel and the briefs filed herein, makes

the following findings of fact and conclusions of law.

## Findings of Fact

1. On April 22, 1950 the respondent issued to libelant its hull policy No. MH 9234 for a period of one year or until noon April 22, 1951. Originally the policy covered the Tug Bessemer valued at $25,000 to the extent of $3750 (or 15% of the valuation) and the Tug Jo Anne McBride valued at $35,000 to the extent of $5250 (or 15% of the valuation). The balance of the insurance on both tugs was carried by four other insurers with The Home Insurance Company acting as the leading insurer. Subsequently the insurance covering the Tug Jo Anne McBride was reduced to $15,000 for port risk and then later reinstated at her old value of $35,000 when she was returned to navigating risk. The insurance on this tug, however, was cancelled on October 6, 1950 and is not at issue in this case.

2. On August 8th, 1950 the Tug Bessemer by agreement of the parties was taken off navigating risk and placed on port risk and the amount of insurance reduced from $25,000 to $10,000 with each insurer maintaining its percentage of participation.

3. On November 21, 1950 one Schade, broker for the assured, contacted by telephone the representative of each of the five insurers advising that the Bessemer was now ready to return to service and requesting that she be taken off port risk and placed back on navigating risk at her full value of $25,000. All insurers agreed.

4. One Gibson, who was contacted by Schade as the representative of respondent herein, admitted in his testimony taken at the trial that he received the phone call and that he agreed to assured's request for the change in the type of insurance. He states, however, that Schade made no request for the increase in the insurance from $10,000 to $25,000 although he admitted on further examination that if Schade had made that request, he, Gibson, would have acceded thereto in behalf of his principal.

5. Schade testified that in his conversation with Gibson he did request an increase in the insurance from $10,000 to $25,000 on the vessel and that Gibson agreed thereto. Schade is supported in his testimony by his secretary who overheard the conversations with each of the insurers' representatives.

6. Both Schade and Gibson are men of unimpeachable veracity and integrity. The court concludes, however, that Schade did advise Gibson of the change in valuation from $10,000 to $25,000 and that Gibson consciously or unconsciously agreed thereto.

7. Schade did not confirm his telephone conversations with any of the insurers' representatives by letter until November 27, 1950, there intervening the long Thanksgiving week-end. In the meantime, however, on November 26, 1950, after having been placed back in service on that same day, the Tug Bessemer sank in Lake Pontchartrain and thereby became a total loss.

8. The Home Insurance Company and the other insurers, respondent excepted, following Home's lead paid the assured on their policies covering the vessel based on the valuation of $25,000. The respondent has refused to follow Home's lead on the ground that Schade in his telephone conversation with their representative Gibson did not mention the fact that the insurance on the Tug Bessemer was to be increased back to $25,000 when she again went on navigating risk. This refusal, however, was not manifested to libelant until March 30, 1951 as will hereinafter appear.

9. The respondent failed to reply to Schade's letter of November 27, 1950 and Schade on December 1, 1950 sent respondent along with the other insurers, Home excepted, copies of endorsements issued by Home changing its policy from port to navigating risk and increasing the valuation to $25,000. In this letter the other insurers were asked to follow Home's lead by preparing similar endorsements for their policies. The other insurers, respondent excepted, issued the endorsements as requested, and on December 15, 1950 Schade sent respondent a follow-up letter asking for the endorsement and advising that endorsements from all other insurers had been received.

118

10. On January 5, 1951, still no answer being received, Schade sent Automobile another follow-up letter enclosing a copy of his letter of December 15th. On January 12, 1951 Schade received a letter from Gibson replying to Schade's letters of December 15th and January 5th and advising that the entire file was in the hands of respondent's attorneys.

11. Nothing further being heard from respondent, Schade on February 27, 1951 addressed a letter to respondent to its home office in Hartford, Connecticut, outlining the problem which had arisen and asking that their local representative be instructed to issue the endorsement on respondent's policy as requested. On March 30, 1951 respondent wrote Schade acknowledging receipt of his letter of February 27th and refusing to issue the endorsement as requested for the reason above outlined.

### Conclusions of Law

1. This court has jurisdiction of this matter and the venue is properly laid in the Eastern District of Louisiana.

2. It is well established that a verbal contract of insurance is enforcible and that in such contract there need not be an express and precise agreement on each of the terms thereof, but on the contrary, the terms may be shown by and implied from the acts of the parties, including the previous dealings of the parties, and from all attending circumstances. Eames v. Home Insurance Co., 94 U.S. 621, 24 L. Ed. 298; Hartford Fire Insurance Co. v. Tatum, 5 Cir., 5 F.2d 169; Bankers Indemnity Insurance Company v. Pinkerton, 9 Cir., 89 F.2d 194; Lumbermen's Mutual Insurance Co. v. Slide Rule & Scale Engineering Company, 7 Cir., 177 F.2d 305; Cooley's Briefs on Insurance, Volume I, 2d Ed. 535.

3. In the circumstances of this case the respondent is bound by the act of its agent agreeing to the insurance at the increased valuation whether that agreement was consciously or unconsciously entered into by him. Restatement of Law of Contracts, § 20. Williston on Contracts, §§ 20, 99, 1535–1537. By his action he deprived libelant of the opportunity of seeking the additional insurance elsewhere and consequently respondent is estopped from denying that it accepted the coverage itself.

4. Since it has been found as a fact that, in his conversation with respondent's agent, Schade mentioned not only the change in the type of risk but also the increase in the insurance, respondent's position in this case is the same as the position of a party to a written contract who admits he signed the contract but denies knowledge of some of its provisions. Watson v. Planters' Bank of Tennessee, 22 La.Ann. 14; Snell v. Union Sawmill Company, 159 La. 604, 105 So. 728.

5. The telephone conversation of November 21, 1950 between Schade and Gibson produced a verbal contract between the libelant and the respondent under the terms of which the Tug Bessemer was insured for navigating risk at a valuation of $25,000, the respondent accepting one-fifth of the risk.

6. Gibson's failure to recognize in Schade's offer the provision for an increase in the amount of insurance constitutes unilateral mistake in the confection of the contract. Since this mistake was in no way induced by or contributed to by Schade, it is not such unilateral mistake as will relieve the respondent from its obligation under the contract, particularly where, as here, it would be inequitable to do so. Williston on Contracts, §§ 20, 99, 1535–1537.

Decree for libelant.