COLETTA, APPELLANT, *v.* THE OHIO CASUALTY INS. CO., APPELLEE.

(No. 4264—Decided January 21, 1953.)

*Messrs. Weick & Mason,* for appellant.
*Messrs. Slabaugh, Guinther & Pflueger,* for appellee.

Doyle, J.    Anthony R. Coletta, the appellant, brought an action, in the Court of Common Pleas of Summit County, against The Ohio Casualty Insurance Company, wherein he sought to recover for a loss sustained by burglary on a claimed agreement with an agent of the defendant company to restore, to full face coverage, a burglary insurance policy theretofore issued by the defendant company to the plaintiff.

The case was submitted to a jury, which returned a verdict in favor of the plaintiff in the amount of $5,000. Following the verdict, a motion for judgment *non obstante veredicto* was sustained, and judgment was entered for the defendant.    The court's journal entry recites that the judgment was entered "for the sole reason that Richard Slusser, who made an agreement with the plaintiff, as testified by the plaintiff and found by the jury, had no authority from the defendant so to do, and the defendant is not bound thereby."

From this final order, appeal has been duly made to this court, and it is here claimed that "the trial court erred in granting appellee's motion * * *, and in rendering judgment against the appellant."

It appears from the record that the plaintiff owned and operated a retail men's clothing store in Akron, Ohio, and that on the 31st of March, 1949, the defendant company (The Ohio Casualty Insurance Company), through "Chas. E. Slusser, authorized agent," issued a policy of insurance protecting him against loss from burglary in the amount of $5,000, with the following general endorsement on the policy, signed by the said general agent:

"In consideration of the premium at which this policy has been written, it is agreed that Item 4 c of the Declarations is amended to indicate that the burglary alarm system is maintained and will be kept in proper working order and connected at all times when the

premises are not open for business while this policy is in force.''

The policy further provided, under the title ''Exclusions'':

''The company shall not be liable * * * (b) for loss or damage * * * (3) contributed to by any change in the condition of the risk, or occurring while any protection or service promised in (b) or (c) of Item 4 of the Declarations is not maintained.''

Burglars broke into the store on the night of December 9, 1949, and stole merchandise valued at $4,036.74. In the course of the burglary, the ''burglar alarm system'' was destroyed. The company acknowledged liability, and later paid, for the loss in the amount above stated.

On the night of December 19, 1949 (ten days later), the store was again burglarized, resulting in a loss of more than $5,000. At the time of the second burglary, the store was not equipped with a burglar alarm system in working order.

Continuing, the record includes evidence indicating that the burglary insurance upon which the loss was paid was solicited by Richard Slusser, vice president and office manager of the Chas. E. Slusser Agency, Inc. The agency was a general agent for the defendant company. Richard Slusser was, in addition to being an officer of the insurance agency company, a soliciting agent for the said corporation agency, which placed the insurance solicited by him and others in various insurance companies which it represented as general agent: and, pursuant to the solicitation of the insurance from the plaintiff by Richard Slusser, the burglary policy of the defendant was duly issued, and delivered by the said Richard Slusser, and payment of the premium was made to the corporate agency in response to a bill from it. .

On the morning following the night of the first burglary, Richard Slusser again called upon the plaintiff, and the testimony tends to prove that Slusser said to the plaintiff that the loss in the burglary "decreased the policy" (presumably this referred to a provision in the policy that any payment or replacement made by the company for the loss in a burglary would reduce the limit of the company's further liability by the amount so paid or the cost of replacement). The plaintiff thereupon replied that he wanted the policy reinstated to a full coverage of the face amount.

The testimony of the plaintiff then continued:

"A. * * * He [Slusser] said it would cost more money. I said 'I don't care, you just build the thing back up.' He said he would do it for me, not to worry about it * * *.

"Q. Tell us what further he said to you and what did you say to him? A. That I was getting in a real expensive burglary alarm system and it would take around two weeks to get it installed, and I wanted to be protected while they were installing the new one. He said 'that's all right, what type are they putting in?' I told him the type, have the metal tape around the windows, the same type as the jewelry stores have on their windows. He said that was very fine, he would take care of the reinstatement of the policy and that I would be protected while they were finishing the new burglary alarm. * * *.

"Q. Was there anything further said about the premium for providing that provision? A. He said that I would be billed for the additional premium."

The testimony of agent Richard Slusser, briefly, was to the effect that he told the plaintiff that "the policy would have to be reinstated back to the amount of $5,000," that the plaintiff told him "to take care of it," and that he "left it in my hands." The testimony further indicated that he (Slusser) contemplated

placing a rider on the policy to carry out the verbal agreement with the plaintiff, but later concluded that, as "there had been no payment on the policy at that time," it was not necessary to do anything about reinstating the policy, because, in the absence of the payment of a loss, he (the plaintiff) continued to have "a full $5,000 coverage." (The loss, although subsequently paid, had not been paid at this time.)

"Q. For reinstating it—then you came to the conclusion after reading the clauses in this policy * * * concerning the payment, that there was no occasion to reinstate the policy until the payment was made, is that right? A. That's right."

It is obvious that this conclusion of Richard Slusser was erroneous, for the reason that, after the loss in the first burglary, the policy was charged with such loss, whether actual payment had been made or not, and coverage then extended only in an amount equaling the remainder, after subtracting the amount of the loss from the amount of the face of the policy. He therefore should have had a rider placed on the policy (as he had first planned), in the furtherance of his oral agreement to reinstate the policy to the full amount.

As heretofore stated, the trial court rendered judgment for the defendant notwithstanding the verdict, for the sole reason that Richard Slusser had no authority from the defendant insurance company to reinstate the policy to the full amount after the diminution of coverage following a loss by burglary.

To the following question we first direct our attention: Is there evidence to justify a conclusion that the defendant company could be bound by the acts of Richard Slusser?

1. There is an allegation in the petition which states in substance that the Chas. E. Slusser Agency, Inc., was a general agent of the defendant company, which

"had general authority to sign, issue and deliver policies of insurance, collect the premiums thereon, and endorse riders thereon of changes or modifications in said policies * * *." The answer of the defendant admits this allegation. It thus appears that no issue is presented in reference to the authority of the corporate agency to do the things therein pleaded. Its powers to act for its principal bring it within the classification of a general agent, as distinguished from a soliciting agent.

Among other "conditions applicable to coverages" as set forth in the policy, is the following: "By acceptance of this policy the assured agrees that it embodies all the agreements existing between himself and the company or any of its agents relating to this insurance, and no provision or condition of this policy shall be waived or altered except by written endorsement attached hereto, signed by the president or secretary of the company and countersigned by a duly authorized agent, nor shall any notice to any agent or knowledge possessed by any agent or any other person be held to effect a waiver or change in any part of this policy."

It is stated by the defendant insurance company that "a solicitor of insurance has no authority to effect * * * a waiver" when the policy contains the above provision.

In review of the evidence, we reach the conclusion that it justifies a finding that Richard Slusser was more than a soliciting agent; he was the vice president and office manager of the corporation, Chas. E. Slusser Agency, Inc., a general agent; his previous dealings with the plaintiff on behalf of the corporation of which he was an officer, and the conduct of the corporation itself (the agency company), reasonably interpreted, is shown to be such as caused him (Richard Slusser) to believe that he had the necessary authority to con-

tract on behalf of the said general agent. Under such circumstances, he may be found to have acted for his principal. The rule which we are now applying is stated in *Miller* v. *Wick Bldg. Co.,* 154 Ohio St., 93, at p. 98, 93 N. E. (2d), 467, as follows:

"If a party by his words or conduct, reasonably interpreted, has caused one, assuming to act as agent for such party in the making of a contract, to believe that such one had the necessary authority to make the contract, such party will be bound by the contract, regardless of whether any words or conduct of such party caused the other party to the contract to believe that the one so assuming to act as agent had authority to make the contract. Restatement of the Law of Agency, Section 26; *Kimball* v. *Kimball Bros., Inc.,* 143 Ohio St., 500, 56 N. E. (2d), 60. * * *.

"If the law did not impose liability upon the principal where there was such implied authority, then one who, in good faith and in reasonable reliance on words or conduct of another party causing him to believe that he had authority to do so, made a contract on behalf of such party would be exposed to liability for a breach of his implied warranty of authority to make such contract. *Trust Co.* v. *Floyd,* 47 Ohio St., 525, 26 N. E., 110, 12 L. R. A., 346. See *Jackson* v. *Watkins,* 128 Ohio St., 407, 191 N. E., 483."

We hold that the above-stated rule binds a principal which has granted general powers to a corporate agent, thereby constituting such general agent its alter ego, when the said corporate agent, by its conduct, has caused one of its chief officers to believe that he possessed the necessary authority to make contracts for and on behalf of his principal.

In addition to the above rules which protect the agent of the general agent (the corporate agency) from personal liability, we find that the evidence and its reasonable inferences justify the conclusion that

the insured himself was led to believe, by the conduct of the corporate agency (the alter ego of the defendant company), that Richard Slusser had authority to make a contract. This rule is stated as follows:

"2. Even where one assuming to act as agent for a party in the making of a contract has no actual authority to so act, such party will be bound by the contract if such party has by his words or conduct, reasonably interpreted, caused the other party to the contract to believe that the one assuming to act as agent had the necessary authority to make the contract." *Miller* v. *Wick Building Co.,* *supra.*

This rule is applicable to a principal which employs as its general agent a corporation, which in turn, through its conduct, reasonably caused a third person to believe that one of its officers was clothed with authority to act and contract for it. In the case under review, there is a legal identity of the defendant insurance company and the corporate general agent. *First National Bank of New Bremen* v. *Burns,* 88 Ohio St., 434, at pp. 440, 441, 103 N. E., 93, 49 L. R. A. (N. S.), 764.

2. Finding as we do that the acts and conduct of Richard Slusser may be reasonably found to bind the principal within the bounds of a general agent's authority, we next proceed to explore the extent of this authority. Can he enter into a contract with an insured contrary to conditions applicable to coverages in respect to changes and assignments set forth in a policy? These conditions are set forth *supra.*

It will be remembered that, after the first burglary, the policy was charged with the loss, and the testimony indicates that Richard Slusser, the agent, entered into an agreement with the insured that he would take care of the reinstatement of the policy to its full face value, and that he, the insured, "would be protected while they were finishing the new burglary alarm." (If this

agreement is true in fact, Richard Slusser, the agent, if unauthorized to contract for his principal, would seem to come within the purview of the first paragraph of the syllabus in *Trust Co.* v. *Floyd,* 47 Ohio St., 525, 26 N. E., 110, 21 Am. St. Rep., 846, 12 L. R. A., 346) :

"1. A person who contracts as agent, without having in fact authority to do so, is personally responsible to those, who, in ignorance of his want of authority contract with him, though he acts in good faith, believing that he is invested with such authority."

In examining the many cases dealing with the authority of a general insurance agent, there is such a maze of inconsistent opinions and theories that one becomes almost discouraged at the outset in commencing an analysis. Some of the opinions even resist analysis. The general principles of the law of agency theoretically are applicable. However, some decisions so thoroughly depart from established doctrines of agency that it may be the courts are developing a new field of law applicable to insurance companies only. As pointed out by Professor Mechem (1 Mechem on Agency [Second Ed.], Section 1049), the home office is usually at a distant place and the local agent takes on in the mind of the insured a representative character not possessed by agents in other fields. The ordinary individual makes his contract without professional advice, trusting instead to the assurances of the agent of the opposite party.

In many of the policies under consideration by the various courts, are provisions like or similar to the provision above quoted, providing that no provision or condition of the policy shall be waived or altered except by written endorsement, etc. In so far as such provisions purport to limit the insurance company itself from subsequently modifying its contract, they are invalid. A company cannot, by contract, disable itself from subsequently modifying its contract or prevent

its subsequent conduct from having the effect the law says that it shall have. See: 5 Cooley's Briefs on Insurance (Second Ed.), 4176. In other words, an insurance company cannot stipulate against the legal effect of its subsequent conduct. The rule was aptly stated by Oliver Wendell Holmes in *Bartlett* v. *Stanchfield*, 148 Mass., 394, 395, 19 N. E., 549, 550, 2 L. R. A., 625, as follows:

"Attempts of parties to tie up by contract their freedom of dealing with each other are futile."

It follows, we think, that empirical or inductive logic requires the conclusion that, if a principal individually cannot disable himself from subsequently contracting orally to modify a written instrument, he cannot disable himself from contracting or binding himself through an authorized agent. Furthermore, if a general agent is vested with authority to conclude contracts, and to "sign, issue and deliver policies of insurance" (see admission in pleadings noted *supra*), such agent is vested with authority to elect the procedure in the making of the contract. If, as in the instant case, the election is made to not attach a rider or written memorandum to the contract, but to treat the old contract, in conjunction with an oral agreement, as full coverage under the policy, it would seem that such election comes directly within the powers conferred upon a general agent.

While recognizing the rule of many cases that a preliminary parol agreement, not incorporated in a subsequent written contract, cannot be shown in contradiction of a policy contract (the so-called "parol testimony rule"), we find no reason to deny a rule permitting a written policy contract to be subsequently modified by a parol agreement. The question usually involved under the latter is not the admissibility of the evidence, but the authority of the agent to make the

modifying agreement. It would seem that the reasoning of Judge Turner in *Hall* v. *Franklin Fire Ins. Co.*, 149 Ohio St., 216, at p. 225, 78 N. E. (2d), 360, followed similar lines in his statement:

"It is not necessary for us to pass upon the question of estoppel as we are of the opinion that under the provisions of Section 9586, General Code, the assignment of a policy of fire insurance to a new owner of the property covered does not differ in principle from the solicitation of a new policy on the same property."

Of interest is the language of Judge Jones in *John Hancock Mutual Life Ins. Co.* v. *Luzio*, 123 Ohio St., 616, at p. 625, 176 N. E., 446:

"The agents of fire insurance companies ordinarily have the right to bind their companies before they actually issue the policy, to attach riders thereto, to make deliveries thereof, and to pass upon the insurability of the property."

It is proper to here observe that knowledge of a general agent of an insurance company is legally equivalent to the knowledge of the principal. This rule of imputation of knowledge is not based upon the theory of actual notice, but rather on considerations of policy—*i. e.*, that, where one seeks the advantages of doing business through general agents, fairness to the other party demands that the principal be in no better position than if he were transacting business in person.

We have been cited to the case of *Fay, Admr.*, v. *Swicker*, 154 Ohio St., 341, 96 N. E. (2d), 196, certiorari denied, 342 U. S., 812, 96 L. Ed., 614, 72 S. Ct., 24, a four-to-three decision of the Supreme Court. The syllabus is as follows:

"1. At common law, ordinarily the knowledge of an agent, received while he is acting within the scope of his authority and in reference to a matter over which

his authority extends, is imputed to such agent's principal.

"2. A principal and a third party have the authority to enter into a contract supplanting with a different rule the common-law rule as to the knowledge of such principal's agent being imputed to the principal, and such contract is valid and enforceable in the absence of circumstances creating an estoppel or making the enforcement of such contract inequitable."

As a subordinate appellate court, we, of course, recognize the pronouncements of the Supreme Court as the law of the state. As a court, however, whether subordinate or not, we recognize our right and duty to consider the pronouncement of a higher court in the light of the factual setting of the particular case.

The Supreme Court case above noted dealt with a false and fraudulent application for insurance made to a *soliciting agent*, which fraud was known to the agent. A policy was prepared by the company and sent to the soliciting agent, but never delivered to the insured. The company later, upon actually learning of the fraud, cancelled the policy as of the date of issuance. The case is authority for the proposition that knowledge of a soliciting agent will not be imputed to the principal where the contract provides otherwise, in the absence of circumstances creating an estoppel or making the enforcement of such contract inequitable. We do not recognize this case as authority for the factual situation with which we are here dealing. The case before us concerns an independent agreement between a general agent and an insured concerning the terms of a contract of burglary insurance entered into in good faith and supplementing an existing, duly-issued policy.

It is our conclusion that the trial court erred in entering judgment *non obstante veredicto*.

There are Ohio cases treating the general subject of the authority of insurance agents—both general and soliciting. They are well known to counsel and will not be here discussed. A few of them we cite, in addition to those cited, *supra*. *Foster* v. *Scottish U. & N. Ins. Co.*, 101 Ohio St., 180, 127 N. E., 865; *Ohio Farmers Ins. Co.* v. *Cochran*, 104 Ohio St., 427, 135 N. E., 537; *National Surety Co.* v. *Bohn*, 125 Ohio St., 537, 182 N. E., 506; *English* v. *National Casualty Co.*, 138 Ohio St., 166, 34 N. E. (2d), 31. See, also, Section 9586, General Code.

We have not deemed it necessary to discuss the legal questions of waiver and estoppel. To the student who would explore these questions in insurance law, we cite 34 Yale Law Journal, 834; 21 California Law Review, 91; 62 Harvard Law Review, 87; 3 Williston on Contracts (Rev. Ed.), Section 745, *et seq.*

This decision, as said before, is based upon the right of the general agent to enter into a parol agreement modifying and supplementing an existing written contract.

Judgment reversed and cause remanded for further consideration.

*Judgment reversed.*

Hunsicker, P. J., and Stevens, J., concur.