**FEDERATED MUTUAL IMPLEMENT &
HARDWARE INSURANCE COM-
PANY, Appellant,**

v.

**FAIRFAX EQUIPMENT COMPANY,
Inc., a corporation, Appellee.**

**No. 5851.**

United States Court of Appeals
Tenth Circuit.

Nov. 20, 1958.

---

Truman B. Rucker (of Rucker, Tabor & Cox), Tulsa, Okl. (Joseph A. Sharp, Tulsa, Okl., on the brief), for appellant. Don Hampton, Pawhuska, Okl. (John W. Tillman and Fred A. Tillman, Pawhuska, Okl., on the brief), for appellee.

Before MURRAH, PICKETT and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

■ Federal Mutual Implement & Hardware Insurance Company brought this declaratory judgment action for a determination of its liability under a multiple peril insurance policy which it had issued to the defendant, Fairfax Equipment Company, Inc. The defendant-insured operated a farm equipment and automobile business at three different locations in Fairfax, Oklahoma. The policy insured against loss to the merchandise placed at these three locations, but fixed a separate limit of coverage for each location.[1] A fire destroyed the building and contents at the location having a coverage of $35,000, causing a loss of approximately $60,000. The insurer contended below that its liability could not exceed this $35,000 limit. The insured's theory was that the insurance coverage agreed to by it and the general agent of the insurer contemplated only one limit of coverage applicable to all the merchandise, wherever located, and that in any event, the $35,000 limit was not in force at the time of the fire because of an oral agreement entered into by the president of the insured and the agent of the insurer after the issuance of the policy. A jury returned a verdict for the insured in the total amount of the loss.

The insurer assigns as error the admission of testimony of the oral statements and assertions of the agent introduced to prove an alleged oral agreement affecting the coverage. The gen-

---

1. The policy was for a total sum of $76,000, and listed the three locations by address and stated the coverage as follows: "35,000.00 at 342 East Side North Main Street; $1,000.00 open lot 340 East Side North Main Street; $40,000.00 open lot across the street from 340 North Main Street; * * *", Fairfax, Oklahoma.

eral authority of the agent to bind the insurer by oral agreement is not questioned, but it is contended that this testimony was inadmissible for the reason that parol evidence cannot be introduced to vary the terms of the written contract of insurance, especially where the contract, expressly provides that it cannot be changed except by written endorsement.[2]

The evidence objected to established that the location limitations were not discussed prior to the issuance of the policy and were inserted by the insurer without approval of the insured; that the general agent advised the insured that there would be a total coverage of $76,000, regardless of where the loss occurred; that the insured had no knowledge of the location limitations prior to the issuance and delivery of the policy; and that insured's president later discussed the matter with the general agent and was advised that the coverage at any one location would be determined, not by the limit fixed by the policy, but by the value of the equipment located on all locations as reported each month to the insurer.[3] That later it developed that the insured did not need more than $10,000 coverage at the location having the $40,000 limit, and the agent was requested to transfer $30,000 of this amount to the location having the $35,000 limit;[4] that the agent stated that this would be done immediately without any increase in premium, and that the insurance company would be bound by his agreement as of that time.

■■ The settled law of Oklahoma is that an insurance policy, if its terms are free from doubt or ambiguity, must be permitted to speak for itself. It cannot be altered or contradicted by parol evidence. National Fire Ins. Co. of Hartford v. McCoy, 205 Okl. 511, 239 P.2d 428; Travelers Indemnity Co. v. Collier, 205 Okl. 247, 237 P.2d 153. It

2. Section 17 of the policy reads: "Notice to any agent or knowledge possessed by any agent or by any other person shall not affect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy."

3. The policy required the insured to file a monthly report with the insurance company setting forth the total value of the inventory located on all lots. The premium was computed on the basis of this total. The report figure made for the month in which the fire occurred was $60,000.

4. The testimony of the insured's president on this matter was:
"Q. He told you at that time that it didn't make any difference? A. That's right.
"Q. Then did he come back? When was the next time you saw Mr. George McCasland? (The Agent). A. Well, the next time was in October when he come by and informed me that International was covering all machines that I had on floor plan with them, which was mostly on the lot across the street. At that time I told him to, that I didn't have $5000 worth of stuff over there paid for, and to lower the lot to $10,000,

and raise the building $30,000, the contents within the building; and he informed me at that time that it wouldn't make any difference in the rate, and I told him if it did I still wanted it done, and he says, 'I will do it.' * * *
"Q. What was the nature of the December conversation that you had with Mr. McCasland? A. Well, in December, I jumped him because I hadn't received a written correction of this policy which he had agreed to do and said he would do in October; and he made the statement at that time it didn't make any difference whether I had it in writing or not, that the company was bound verbally by his agreement." * * *
A disinterested witness who heard the conversation testified:
"Q. Did you hear the discussion relative to the fact that the insurance company was bound right now; did Mr. McCasland make such a statement? A. Well, Glenn was asking him what the premium, when he transferred the $30,000 over to his building, if there would be an increase in the premium, and George told him 'No', that there would not and George asked Mr. McCasland about having it in writing, and George said, 'Well, you are bound on it, if that's the way you want it, right now.'
"Q. Without it being in writing, is that it? A. That's right."

has also been held that it is reasonable and competent for an insurance company to include in a policy a clause, such as Section 17, limiting the agent's authority to alter the policy, and that the insured is bound by it. United States Fidelity & Guaranty Co. v. Thompson, 192 Okl. 364, 136 P.2d 875; Shaffer v. Ocean Accident & Guarantee Corp., Ltd., 153 Okl. 135, 5 P.2d 363; Liverpool & L. & G. Ins. Co. v. T. M. Richardson Lumber Co., 11 Okl. 585, 69 P. 938. These cases dealt with the question of the authority of an insurance agent to alter or vary the existing provisions and conditions of a policy, and are not decisive in this case. The question presented here is not one of altering or varying the terms of the existing policy, but whether an agent, having authority to write policies and bind the company, made a new contract to conform to the understanding of the parties.

■■■ It has long been the law of Oklahoma that where a fire insurance company appoints a general agent for the company, the agent may bind the company by an oral contract of insurance and liability attaches under such a contract without the issuance and delivery of a policy. DeNoya v. Fidelity Phoenix Ins. Co., 110 Okl. 235, 237 P. 125; Massachusetts Bonding & Ins. Co. v. Vance, 74 Okl. 261, 180 P. 693, 15 A.L.R. 981; McCracken v. Travelers' Ins. Co., 57 Okl. 284, 156 P. 640. Applying this rule, the plaintiff's general agent had full authority to make a new contract by oral agreement with the insured and substitute it for the existing policy, and could bind the insurance company for the amount which is contended for here by the insured. Globe & Rutgers Fire Ins. Co. v. Baylen Street Wharf Co., 5 Cir., 38 F.2d 197, 199; Taylor v. State

Ins. Co., 98 Iowa 521, 167 N.W. 577. The result of the oral agreement was not the modification or alteration of the original policy, but a transfer of insurance from one location for the purpose of increasing the coverage at another. A general agent may, by oral agreement, bind an insurance company to an increase in the policy coverage, and policy restrictions such as Section 17 are not applicable. McBride v. Home Ins. Co., D. C.E.D.La., 105 F.Supp. 116, affirmed sub nom. Automobile Ins. Co. of Hartford, Conn. v. McBride, 5 Cir., 204 F.2d 929,[5] 930; Coletta v. Ohio Cas. Ins. Co., 96 Ohio App. 70, 121 N.E.2d 148. We therefore conclude that the evidence objected to was properly admitted to establish the oral contract of coverage in place of the policy issued by mutual mistake of the parties. Clearly it was contemplated that there should be a total liability of $76,000, and that conditions might require an increase or decrease of liability as to any one location. The policy required monthly reports showing the total value of insured property on the three locations. The form furnished by the company upon which these reports were to be made stated: " * * * if any of the limits are too low, ask the company to increase them. Check your limits of liability." The method of notification was not prescribed, and the evidence was competent to establish that the insured requested, and the general agent agreed, to lower the limit of liability on one location and raise the limit of another a corresponding amount.

■■ The insurance company assigns as error the failure of the court to instruct the jury as to the effect of Section 17 of the policy. The insurer offered no instruction on the subject and no exception was taken to those given

5. In Automobile Ins. Co. of Hartford, Conn. v. McBride, the court used language appropriate to this case, when it said: "Schade [insured] having actually communicated to Gibson [agent] the request to increase the amount of the policy and Gibson having expressed his assent to the increase, the contract between the parties became complete and was not affected by any unexpressed intention or misunderstanding on the part of Gibson. In addition to the authorities cited by the District Judge, [105 F. Supp. 116] see Bach v. Friden Calculating Mach. Co., 6 Cir., 155 F.2d 361, 365; 12 Am.Jur., Contracts, Secs. 19 and 20."

by the court. The giving or the failure to give an instruction will not be reviewed on appeal without seasonable objection. Rule 51, Fed.Rules Civ.Proc., 28 U.S.C.A.; Corbin v. United States, 10 Cir., 253 F.2d 646; Justheim Petroleum Co. v. Hammond, 10 Cir., 227 F.2d 629; Comins v. Scrivener, 10 Cir., 214 F.2d 810, 46 A.L.R.2d 1; Oklahoma Natural Gas Co. v. Concho Const. Co., Inc., 10 Cir., 209 F.2d 269.

Affirmed.