Gene Allen HOOD, Jr., by next friend, Gene Allen Hood, Gene Allen Hood and Iris Hood, Plaintiffs-Appellants,

v.

MILLERS' MUTUAL INSURANCE AS-SOCIATION, Defendant-Respondent.

No. 10170.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 26, 1979.

Motion for Rehearing or Transfer to Supreme Court Denied March 7, 1979.

Bob J. Keeter, Schroff, Keeter, Glass & Newberry, Springfield, for plaintiffs-appellants.

James K. Prewitt and David F. Sullivan, Prewitt, Jones & Karchmer, Springfield, for defendant-respondent.

PER CURIAM:

This is an equitable garnishment action by which the plaintiffs seek to satisfy a judgment under the liability coverage of an automobile insurance policy. The insurer, in effect, admitted the policy was in force, but denied coverage because the automobile described in the policy had been changed from a 1959 Pontiac (the automobile involved in the accident which resulted in the judgment) to a 1964 Buick. The trial court found such change had been made and that the policy provided no coverage.

The case involves a factual dispute concerning the date the named insured contacted the agent and requested the change. Upon the resolution of that question unfavorably to the plaintiffs, there is presented the question of the effect of that request and the agent's assent thereto.

The policy was issued through agent Robert Bishop for an initial six-month policy period September 9, 1970, to March 9, 1971. The named insured was Larry E. Youngblood. The initial described automobile was a 1969 Ford. Some time before the incident in question the described automobile was changed to the Pontiac. The effectiveness of this prior change is not questioned.

In addition to the Pontiac, Youngblood owned a 1964 Buick. The date he acquired this Buick is not shown in evidence. The Buick had not been driveable. The Buick was in the process of repair and although it is not clear those repairs were completed, Youngblood determined to sell the Pontiac.

On November 9, 1972, Jack E. Freitag and son, J. Edward Freitag, went to Youngblood's to buy the Pontiac. They tried it out and found it satisfactory. Youngblood "sold" the Pontiac to Jack E. Freitag for $100.00. A check was given. Youngblood signed the title in blank and gave it to Jack E. Freitag. Youngblood's signature was not "notarized". J. Edward Freitag drove away in the Pontiac. Youngblood's signature was notarized and blanks in the assignment were completed January 3, 1973.

After the sale, on a date which was disputed, at about 8:30 a. m. Youngblood called agent Bishop. Youngblood testified he told him he wanted the insurance transferred from the Pontiac to the Buick immediately and Bishop replied, "you're covered". Bishop testified he could not recall the exact language Youngblood used, he as-

sumed Youngblood said he wanted coverage transferred and that is what Bishop did, effective November 10.

While talking with Youngblood, agent Bishop took a form provided by defendant for making changes in policies and completed it in respect to the requested change. In the upper right hand corner of this form there is a rectangle "Requested By" with boxes to check: phone, interview, insured and other. Phone was checked. That portion headed "Change in cars" was completed: Eliminate 59 Pont., "Has been sold" was checked. It was further completed, "Add" 1964 Buick, giving a motor number.

The form has blanks for dates in two places; following "Effective Date" and following the words "This car has been sold". Both the original (which was sent to the insurer) and copy (which was kept by the agent) of this form were in evidence. The dates originally inserted in these two spaces were: 11–11–72. They had been altered by writing over the fourth number 1 to read: 11–10–72. The space alongside the first date calling for the time to be inserted was left blank. By deposition seven days before trial, plaintiffs' expert witness Craig testified the form had been altered.

Youngblood testified the call was made November 10. Bishop testified he did not work too often on Saturdays except to open his mail and then go home. (November 11, 1972, was a Saturday). He stated the call was made and the form completed November 10. He assumed the alteration resulted from the fact he looked at the calendar wrong, first wrote "11" then changed it as indicated to "10".

Youngblood testified he thought he put the check in the bank the day he got it. On the back of the check the unexplained dates November 10, 1972, and November 11, 1972, are stamped. Freitag told Youngblood of the accident November 11 and Youngblood reported the accident to Bishop on November 11 or 13. Bishop or the home office referred the matter to General Adjustment Bureau for investigation.

Bishop also assumed that he mailed the original of the form the evening of November 10. The original bears the handwritten inscription "OK, KB, 11–16–72". Karen Boedeker was on that date an employee in the home office of the insurer. A copy of a formal endorsement was received by Bishop. In substance it states "it is agreed" that the policy is amended to cover the Buick. The apparent date printed at the lower left is 11/21. The space for the signature of an authorized representative is blank. The endorsement is declared to be effective November 10, 1972. Youngblood said he did not receive a copy of the endorsement.

The evidence on the scope of Bishop's agency is confined to his testimony. He testified: He represented no other company; he did not have a general agency agreement with defendant; he did have an employee contract which guaranteed him so much per month, plus commissions. He stated he had authority to bind coverage and to make changes in coverage without contacting the home office.

On November 10, 1972, between 3:00 and 4:00 p. m. J. Edward Freitag, driving the Pontiac, was in an accident with an automobile driven by Gene Allen Hood, Jr. The judgment which the plaintiffs seek to collect resulted from this accident.

The trial court made findings of fact and conclusions of law including the following:

2. That at approximately 8:30 A.M. on November 10, 1972, Larry Youngblood phoned Bob Bishop, General Agent for Millers' Mutual Insurance Association, and changed his insurance coverage effective immediately.

6. That the Change Request was originally dated November 11, 1972, because Bob Bishop misread a calendar and changed immediately to November 10, 1972, which change occurred at approximately 8:30 A.M. and before the said accident.

## CONCLUSIONS OF LAW

1. That the insurance coverage was transferred from the 1959 Pontiac to a 1964 Buick prior to the accident and that

Defendant Millers' Mutual Insurance Association had no insurance coverage on the 1959 automobile at the time of the accident.

Plaintiffs urge this court to find that the telephone transaction between Youngblood and Bishop occurred on November 11, 1972, instead of at 8:30 a. m., November 10, 1972. We can appreciate the suspicions aroused in the plaintiffs and their vigorous efforts to prove this to be true. However, "the . . . judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence . . ." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We are further enjoined to give deference to the determination of the trial court concerning the credibility of witnesses. The basis of this rule of deference has never been more clearly and eloquently expressed than by the late Judge Ruark, speaking for this court, when he said:

This rule is not an artificial one created simply to divide responsibility. The reason lies in the fact that the trial court sees and appraises the witnesses in person. Before him are all of the nuances, the thousand and one things which speak only to the ear and eye. Truth in a courtroom is a vibrant, moving, beckoning thing, frequently whispering, occasionally shouting, and sometimes silently signaling. But truth pressed in by the cold sheets of a sterile record may become a pallid, shapeless thing, sometimes indistinct because covered by a blanket of printed contradictions. We defer to the judgment of the trial court in respect to credibility simply because he is in a better position to judge it. In *E—— v. G——*, 317 S.W.2d 462, 467 (Mo.App. 1958).

The trial court expressly found this telephone transaction took place at 8:30 a. m. on November 10, 1972, before the automobile accident on that day. We defer to that finding.

The plaintiffs assert that J. Edward Freitag was an "omnibus insured" under the policy. By that policy an insured is defined: "(a) with respect to an owned automobile, (1) the named insured, (2) any other person using such automobile with the permission of the named insured . . ."

Since the title to the Pontiac was delivered to J. Edward Freitag, in blank, with Youngblood's signature not notarized, for most considerations the automobile was yet owned by Youngblood. Under the circumstances, J. Edward Freitag was using an automobile owned by Youngblood with the permission of Youngblood. *State Farm Mutual Auto Ins. Co. v. MFA Mut. Ins. Co.*, 485 S.W.2d 397 (Mo. banc 1972); *Greer v. Zurich Insurance Company*, 441 S.W.2d 15 (Mo.1969).

But, because such ownership was yet vested in Youngblood it does not necessarily follow that the Pontiac was an "owned automobile" within the meaning of the policy. The policy defines an owned automobile as:

(a) [an] . . . automobile . . described in this policy . . ., (b) [an] . . . automobile . . . ownership of which is acquired by the named insured during the policy period, provided: (1) it replaces an owned automobile . . . ; or (2) the company insures all . . . automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company within 30 days thereafter of his election to make this . . . policy . . . applicable to such automobile . . ., (c) a temporary substitute automobile,

.     .     .     .     .

*National Indemnity Company v. Giampapa*, 65 Wash.2d 627, 399 P.2d 81, (banc 1965) involved a policy provision for automatic insurance or replacement somewhat different from the provision in defendant's policy. In construing that policy the court held the completion of repairs on a previously owned automobile the equivalent of acquisition of ownership and that the repaired automobile was a replacement automobile. The de-

fendant cites this case and asserts that Youngblood's call to agent Bishop was a signal of the completion of repairs to the Buick and his determination to replace the Pontiac. Defendant then says upon the replacement coverage being applicable to the Buick, coverage upon the Pontiac automatically terminated, citing *Beck Motors, Inc. v. Federal Mutual Insurance Co.,* 443 S.W.2d 200 (Mo.App.1969); *Missouri Managerial Corporation v. Pasquelino,* 323 S.W.2d 244 (Mo.App.1959); *National Indemnity Company v. Aanenson,* 264 F.Supp. 408 (D.C.Minn.1967). As we find defendant's alternate argument of modification to be sound, the questions raised by the theory set forth above need not be decided.

The determinative question is whether or not at the time of the accident the Pontiac was the described automobile. It was before 8:30 a. m. on November 10, 1972. If it was not thereafter, it was because the declarations of the policy had been modified to provide otherwise. So, the question may be further refined: did Youngblood and agent Bishop at that time orally modify those declarations to cause the Buick to be the described automobile in the place of the Pontiac?

■ The plaintiffs urge that it was the understanding of the parties that Youngblood was merely requesting a change which would have to be made effective at the home office. In doing so they place emphasis on the language of the form used by Bishop in recording the information. They seize upon the words "Requested by", located in the described box, as indicative of that understanding. We do not so construe the form. These words refer to the person making the request and manner in which it was made. The form can be more appropriately construed as a means of transmitting to the company information of an agreed upon modification so that records may be appropriately changed and a formal endorsement issued. This is clearly indicated by the blank for inserting the effective date.

■ From the evidence, the trial court could reasonably find that it was the intent and oral agreement of Youngblood and Bishop that the policy be modified at the time of their conversation. Unless there is some legal impediment this modification must be given effect.

■ The fact the modification was oral is not a bar. Oral binders and modifications are recognized. *Chailland v. M. F. A. Mutual Insurance Co.,* 375 S.W.2d 78 (Mo. banc 1964); *Morris v. Reed,* 510 S.W.2d 234 (Mo.App.1974).

■ Of course, the effectiveness of the oral modification is dependent on the authority of agent Bishop, actual or implied. Many discussions on this point center on a determination of whether an agent is a "general agent" or "soliciting agent". While such terminology may be useful shorthand expressions, such appellations are not decisive. In reality, the analysis is whether or not the agent, regardless of his designation, had authority, actual or implied, to bind the company in respect to the particular transaction in question.

■ The scope of an agent's authority may be established by testimony of the agent. 3 Am.Jur.2d, Agency, § 353 at p. 711; *Southwestern Bell Tel. Co. v. Roussin,* 534 S.W.2d 273 (Mo.App.1976). The unobjected to and undisputed testimony of Bishop was that he was authorized to make the modification effective immediately. His authority is further supported by the form supplied by the company containing a blank for the insertion of the effective date and the subsequently issued declaration effective on the designated date. *Travelers Indemnity Company v. Beaty,* 523 S.W.2d 534 (Mo.App.1975); *Baker v. St. Paul Fire & Marine Insurance Company,* 427 S.W.2d 281 (Mo.App.1968).

■ Plaintiffs assert the oral modification was ineffective because of condition 15 of the policy, which reads as follows:

15. Changes: Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any

right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

We do not necessarily construe this condition to refer to items on the declarations such as the named insured, described automobile or limits of coverage. This need not be decided as it is well established that such a condition does not bar a modification by an agent acting within the scope of his actual or implied authority. *Bergerson v. General Ins. Co. of America*, 232 Mo.App. 549, 105 S.W.2d 1015 (1937); *Kratchman v. North British & Mercantile Ins. Co.*, 240 Mo.App. 297, 203 S.W.2d 483 (1947); *Automobile Underwriters Corporation v. Graves*, 489 F.2d 625 (8th Cir. 1973); 43 Am.Jur.2d, Insurance, § 353 at p. 402; 44 C.J.S. Insurance § 281 at p. 1120. The rationale of this rule has been expressed:

> In so far as such provisions purport to limit the insurance company itself from subsequently modifying its contract, they are invalid. A company cannot, by contract, disable itself from subsequently modifying its contract or prevent its subsequent conduct from having the effect the law says that it shall have. *Coletta v. Ohio Cas. Ins. Co.*, 96 Ohio App. 70, 121 N.E.2d 148, 154 (1953).

Cases cited by plaintiffs, *American Family Mutual Insurance Company v. Bach*, 471 S.W.2d 474 (Mo.1971); *Farmers Mutual Hail Insurance Company v. Minton*, 279 S.W.2d 523 (Mo.App.1955); and *Cole v. Kansas City Fire & Marine Ins.*, 254 S.W.2d 304 (Mo.App.1953) are not controlling because, among other reasons, in those cases there was no evidence that the agent was authorized to make the modifications under consideration.

■ The trial court concluded that the declarations were amended to provide the Buick was the described automobile in place of the Pontiac. In so doing it did not erroneously declare or misapply the law. The judgment is affirmed.

All concur.