OPINION
Plaintiff-Appellant, Shelly R. Grimm ("Appellant"), appeals the decision of the Court of Common Pleas of Auglaize County granting summary judgment in favor of Defendants-Appellees, USLife Credit Life Ins. Co. ("USLife") and Minster State Bank ("Minster Bank"). For the following reasons, we affirm in part and reverse in part the decision of the court below.
The pertinent facts are as follows. In January of 1997, Appellant and her husband, Stanley Michael Grimm, applied for a residential mortgage loan with the Minster State Bank. Minster Bank subsequently approved the loan. The amount of the loan was $40,000. On February 14, 1997, the parties finalized the transaction. The repayment of the loan was to take place over a period of 360 months. Pursuant to the promissory note, the first loan payment was due on April 1, 1997. The final payment of the loan was due on March 1, 2027.
Richard L. Bergman, loan manager of Minster Bank, handled the transaction. During the closing on February 14, 1997, Mr. Bergman inquired as to whether the Grimms would like to purchase credit life and disability insurance.[1] The Grimms decided to acquire both forms of insurance. Thereupon, Mr. Bergman provided them with the necessary documents to obtain the insurance coverage. Both the credit life and disability insurance were offered through USLife. The Grimms filled out, signed, and dated the mortgage life insurance application. Mr. Grimm also filled out and signed the mortgage disability insurance application. Mr. Bergman provided the Grimms with a truth-in-lending form disclosing the terms of the transaction. The Grimms then signed the disclosure form.
On March 25, 1997, Mr. Grimm was killed in an automobile accident. Appellant was informed through a letter dated April 22, 1997 that, although the credit life insurance application had been accepted by USLife on April 2, 1997, her claim for death benefits had been rejected. The letter informed her that, according to the terms contained on the reverse side of the application, the credit life insurance policy did not become effective until May 1, 1997. Thus, she was not entitled to the proceeds of the life insurance policy. Appellant then initiated the present action.
In the trial court below, USLife and Minster Bank filed separate motions for summary judgment. The trial court granted both of the motions for summary judgment. Appellant now appeals, asserting five assignments of error.
Standard of Review for Summary Judgment
 In considering an appeal from the granting of a summary judgment, we review the grant of the motion for summary judgment independently and do not give deference to the trial court's determination. Schuch v. Rogers (1996), 113 Ohio App.3d 718, 720. Accordingly, we apply the same standard for summary judgment as did the trial court. Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988) 42 Ohio App.3d 6, 8.
Summary judgment is proper when, looking at the evidence as a whole (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); Horton v. Harwick Chemical Corp. (1995) 73 Ohio St.3d 679,686-87. To make this
showing the initial burden lies with the movant to inform the trial court of the basis for the motion and identify those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. Dresher v. Burt (1996) 75 Ohio St.3d 280,293. Those portions of the record include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action. Civ.R. 56(C).
Having set forth the proper standard of review, we now turn to the merits of Appellant's five assignments of error. Appellant's first and fourth assignments of error will be addressed simultaneously, as each alleged claim of error concerns a related issue.
Assignment of Error No. I
 The trial court erred in granting summary judgment to Defendant Minster Bank on Plaintiff's claim of negligent misrepresentation. The evidence before the court demonstrated that Defendant Minster Bank affirmatively misrepresented the coverage period of the Credit Life insurance it sold to the Grimms and that the Grimms suffered damages by not having Credit Life Insurance coverage at the time of Stanley Grimm's death.
Assignment of Error No. IV
 The trial court erred in granting summary judgment to USLIFE Credit Life insurance Company on Plaintiff's claim of negligent misrepresentation.
Appellant initially maintains that genuine issues of material fact remain to be litigated upon the issues of whether both Minster Bank and USLife negligently misrepresented the term of coverage under the credit life insurance policy. For the following reasons, we agree.
Negligent misrepresentation is evidenced by the failure to exercise reasonable care. See Delman v. Cleveland Heights (1989),41 Ohio St.3d 1, 4. In addressing the issue of negligent misrepresentation, the Supreme Court of Ohio has held in pertinent part that:
 One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
Delman, 41 Ohio St.3d at 4, quoting 3 Restatement of the Law 3d, Torts (1965), 126-127, Section 552(1). Therefore, a negligent misrepresentation occurs when one "supplies false information for the guidance of others." In other words, a "[n]egligent misrepresentation does not lie for omissions; there must be some affirmative false statement." Zuber v. Ohio Dept. of Ins. (1986),34 Ohio App.3d 42, 45-46.
Appellant initially maintains that a genuine issue of material fact remains to be litigated upon the issue of whether Minster Bank is liable for negligent misrepresentation. The evidence adduced from the record below is as follows. The following provision appears on the reverse side of the credit life insurance application:
THE INSURANCE APPLIED FOR WILL BECOME EFFECTIVE ON THE FIRST DAY OF THE MONTH FOLLOWING APPROVAL OF THE APPLICATION IF APPROVED BY THE 20TH OF THE MONTH. IF APPROVED AFTER THE 20TH OF THE MONTH, INSURANCE WILL BECOME EFFECTIVE ON THE FIRST DAY OF THE SECOND MONTH FOLLOWING APPROVAL. WE RESERVE THE RIGHT TO REQUIRE MEDICAL EXAMS.
The record below shows that the Grimms' application for credit life insurance was accepted on April 2, 1997. Thus, pursuant to the effective date provision set forth on the reverse side of the credit life insurance application, the policy was to become effective May 1, 1997. However, the truth-in-lending form given to, signed, and dated by the Grimms on February 14, 1997 appears to contradict the terms set forth in the credit life insurance application.
The truth-in-lending statement may appear to the average mortgage loan consumer that the term of coverage of the credit life insurance policy equals the term of coverage of the consumer loan, the latter of which became effective on February 14, 1997. Appellant also testified in her deposition that, had she and her husband known that the credit life insurance policy was not immediately effective, they may not have obtained the insurance from USLife.
For the reasons aforementioned, we find that a genuine issue of material fact remains to be litigated as to whether Minster Bank, through the terms and conditions set forth in the truth-in-lending disclosure form, negligently supplied false information with regard to the coverage term of the credit life insurance policy.
However, we also note that Minster Bank, as a procurer of USLife insurance policies, is an agent of USLife. R.C. 3929.27
specifically provides in pertinent part that:
 A person who solicits insurance and procures the application therefor shall be considered as the agent of the party, company, or association thereafter issuing a policy upon such application or a renewal thereof, despite any contrary provisions in the application or policy.
This provision codifies the common law rule in Ohio that a person who solicits and procures an application of insurance is the agent of the resulting insurance company. Saunders v. Allstate Ins. (1958), 168 Ohio St. 55, 59-60; Cf., R.C. 3911.22. This provision was designed to protect the insured, who often relies heavily on the agent. The existence of an agency relationship is generally a question of fact for the jury. McSweeney v. Jackson (1996),117 Ohio App.3d 623. In the present case, however, the evidence is undisputed that Minster Bank solicits and procures applications of insurance on behalf of USLife. Therefore, as a matter of law, Minster Bank is an agent of USLife.
Ohio law clearly provides that an agent who contracts with a third party on behalf of a disclosed principal, and is the authorized agent of the principal, is not personally liable on the contract. Estate of Oelberg v. Skags (June 4, 1998) Franklin App. No. 97APE10-1383, unreported. In such cases, the contract is entirely the principal's contract, and the agent incurs no liability. See Raudabaugh v. Hart (1899), 61 Ohio St. 73; see, also, Master Consolidated Corp. v. BancOhio Natl. Bank (1991),61 Ohio St.3d 570, 574 (holding that a principal is liable for the acts of his agent if the agent had authority to act for the principal).
An agent's authority to act on behalf of its principal may be either actual or apparent. Actual authority, sometimes called real authority, may be expressed or implied. Master Consolidated Corp., 61 Ohio St.3d at 574. Further, an insurance company may be bound by the actions of its agent acting within the scope of his apparent authority. Clements v. Ohio State Life Ins. Co. (1986),33 Ohio App.3d 80, 84; Coletta v. Ohio Cas. Ins. Co. (1953),96 Ohio App. 70.
In the case before us, should the trier of fact determine that Minster Bank negligently misrepresented the terms and conditions of the credit life insurance policy, we find that a genuine issue of material fact remains to be litigated upon the issue of whether USLife, as principal therein, is liable for damages. For these reasons, we hold that the trial court erred in granting summary judgment in favor of the Appellees Minster Bank and USLife upon Appellant's claims of negligent misrepresentation.
Accordingly, Appellant's first and fourth assignments of error are well-taken and sustained.
Assignment of Error No. II
 The trial court erred in granting summary judgment to Defendant Minster Bank on Plaintiff's claim for breach of contract. The Truth in Lending statement created a contractual obligation on the part of Minster Bank to secure Credit Life Insurance for the Grimms which would provide coverage over the entire life of the loan.
Appellant maintains in her second assignment of error that the truth-in-lending statement establishes a binding contract. Therefore, a genuine issue of material fact remains to be litigated as to whether Minster Bank is liable for breach of that contract.
"A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes a duty." Ford v. Tandy Transp. Inc. (1993), 86 Ohio App.3d 364, citing Restatement of the Law 2d, Contracts (1981) 5, Section 1. A contract between parties requires an offer, acceptance, and a meeting of the minds. Rulli v. Fan Co. (1997), 79 Ohio St.3d 374, 376.
In the case sub judice, Appellant asserts that the truth-in-lending disclosure form constitutes an offer for credit life insurance at the terms and conditions set forth therein. Specifically, Appellant asserts that the truth-in-lending form offers joint credit life insurance for a total premium fee of $1,872 over a coverage term of 360 months. Appellant maintains that she and her husband had accepted the offer by indicating their desire to acquire the credit insurance on the disclosure form. For the following reasons, we cannot find that the aforementioned affirmative acts rise to the level of a binding contract.
The purpose of the Truth-in-Lending Act is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, * * *." 15 U.S.C. § 1601(a). To achieve this goal, the Truth-in-Lending Act requires creditors to provide certain disclosures to consumers concerning the terms and cost of a credit transaction. 12 C.F.R. 226.1(a). In addition, Regulation AA defines and prohibits unfair or deceptive practices of banks in connection with extensions of credit to consumers. 12 C.F.R. 227.11. These statutes and banking rules apply only to consumer transactions, i.e., loans obtained for personal, family, or household purposes. 15 U.S.C. § 1602(h);12 C.F.R. 226.2(a)(12); 12 C.F.R. 227.12(a).
In the case before us, it is firmly established that Minster Bank was required by law to provide a truth-in-lending disclosure form to the Grimms. As we previously stated, the purpose of such a form is to provide certain disclosures to consumers concerning the terms and costs of a credit transaction. 12 C.F.R. 226(a)(1). Having determined that disclosure of the costs and terms of a credit transaction is required under the law, we cannot find that such a form, nor the terms or conditions contained therein, constitute an offer for insurance. Therefore, Appellant's proposition is not well-taken and we find that the trial court's order granting summary judgment on the issue was correct in all respects.
Accordingly, Appellant's second assignment of error is overruled.
Assignment of Error No. III
 The trial court erred in granting summary judgment to defendant USLIFE on Plaintiff's claim of estopple [sic]. Defendant USLIFE Credit Life Insurance Company is estopped from denying coverage to Plaintiff for the death of Decedent Stanley M. Grimm and/or the joint credit life insurance was effective throughout the entire loan period including the date of decedent's death.
Appellant maintains in her third assignment of error that a genuine issue of material fact remains to be litigated upon her claim of equitable estoppel. For the following reasons, we agree.
Equitable estoppel has been defined as "[t]he doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he would otherwise have had." Black's Law Dictionary (6 Ed. 1990) 538. The doctrine's purpose is to promote justice by preventing both actual and constructive fraud. Ohio State Bd. of Pharmacy v. Frantz (1990), 51 Ohio St.3d 143, 145.
In Ohio, courts have applied a four pronged test to determine if the essential elements of equitable estoppel have been satisfied. To show a prima facie case for application of the doctrine of equitable estoppel, a plaintiff must show that (1) the defendant made a factual misrepresentation, (2) that is misleading, (3) that induces actual reliance that is reasonable and in good faith, and (4) that causes detriment to the relying party. Walworth v. B.P. Oil Co. (1996), 112 Ohio App.3d 340, 345; see, also, Doe v. Blue Cross/Blue Shield of Ohio (1992), 79 Ohio App.3d 369,379; First Fed. S. L. Assn. v. Perry's Landing, Inc. (1983), 11 Ohio App.3d 135, 145.
Under the doctrine of equitable estoppel, an insurance company can be precluded from asserting certain facts where the insurance company, through its own wrongful conduct or mistakes, has induced another to change his position in good faith reliance upon the insurer's actions. Duerler v. Community Mut. Ins. (Apr. 18, 1991), Franklin App. No. 90AP-1337, unreported; Pedler v. Aetna Life Ins. Co. (1986), 23 Ohio St.3d 7.
In the present case, Appellant testified in her deposition that on April 18, 1997, she spoke with Marie Cierny, a USLife mortgage administration department employee. According to Appellant, Ms. Cierny informed her that the credit life insurance policy was in effect at the time of her husband's death on March 25, 1997. Appellant also testified that Lucretia Williams, a supervisor in the mortgage department of USLife, confirmed that the credit life insurance policy was in effect at the time of her husband's death. Further, Appellant's mother, Vivian Warner, testified in her deposition that she had been listening to the conversations on another telephone line, and that both Marie Cierny as well as a supervisor had told Appellant that the credit life insurance policy was in effect at the time of Mr. Grimm's death.
For these reasons, we find the evidence firmly establishes that a genuine issue of material fact remains to be litigated upon the issue of whether USLife made a misleading factual misrepresentation regarding the effective date of the credit life insurance policy. However, Appellant has set forth no evidence demonstrating that such a misleading factual misrepresentation induced her to change her position in good faith reliance upon USLife's actions. Therefore, upon these facts, we cannot find that a genuine issue of material fact remains to be litigated upon Appellant's claim of equitable estoppel.
However, Appellant further asserts that USLife is estopped from denying Appellant the benefit of the credit life insurance proceeds because any factual misrepresentation on the part of Minster Bank, as agent of USLife, is also a factual misrepresentation on the part of the principal, USLife. As we previously stated, Minster Bank, as a solicitor of insurance and procurer of mortgage life and disability insurance applications for USLife, is considered an agent thereof. Again, a principal is liable for the acts of his agent if the agent had authority to act for the principal. Master Consolidated Corp.,61 Ohio St.3d at 574.
In the present case, we find that a genuine issue of material fact remains to be litigated upon the issue of whether Minster Bank made a misleading factual misrepresentation with regard to the terms and conditions set forth within the truth-in-lending disclosure form. Further, Appellant testified in her deposition that she and her husband may not have obtained the credit life insurance from USLife had they known that the insurance policy did not immediately go into effect.
Thus, should the trier of fact determine that Minster Bank made a misleading factual misrepresentation which induced actual reliance that was detrimental, reasonable, and in good faith, we find that a genuine issue of material fact remains to be litigated upon the issue of whether USLife, as principal, is liable for damages therein. For the reasons stated, we find that the trial court erred in granting summary judgment in favor of USLife.
Accordingly, Appellant's third assignment of error is well-taken.
Assignment of Error No. V
 The trial court erred in granting summary judgment to USLIFE Credit Life insurance Company on Plaintiff's claim for bad faith. A question of fact exists as to whether Defendant USLIFE is liable to Plaintiff for bad faith in handling Plaintiff's claim for death benefits.
 Appellant maintains in her final assignment of error that a genuine issue of material fact remains to be litigated upon her because of action for bad faith. For the following reasons, we do not agree.
An insurer's duty of good faith is based upon the relationship of the two parties and justified by the disparity between the economic and bargaining positions of the two parties. Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272. The insurer has the duty to act in good faith in the handling and the payment of the claims of an insured. Id.
The Supreme Court of Ohio in Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, held that an insurer fails to exercise good faith in processing a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor. Id. The refusal to pay may not be arbitrary or capricious but, rather, the conduct of an insurer must be based on circumstances that furnish a reasonable justification therefor. Id.
In the case before us, USLife asserts that the credit life insurance policy was not in effect at the time of Mr. Grimm's death on March 25, 1997. USLife vehemently contends that the effective date provision located on the reverse side of the credit life insurance application controls the ultimate outcome of the present case. USLife maintains that the policy of insurance did not become effective until May 1, 1997.
We note that the insurance application does set forth a provision governing the effective dates of such policies. According to the language contained in the application for insurance, the policy was not in effect at the time of Mr. Grimm's death. Therefore, we find that the refusal of USLife to pay the credit life insurance claim was reasonable under the circumstances, and we further find that such a decision was neither arbitrary nor capricious.
For the reasons aforementioned, we find no genuine issue of material fact remains to be litigated upon Appellant's claim for bad faith. Hence, the trial court's decision was proper in every respect.
Accordingly, Appellant's fifth assignment of error is overruled.
In conclusion, we find Appellant's first, third, and fourth assignments of error well-taken and remand this cause for further proceedings consistent with this opinion.
Judgment affirmed in part and reversed in part.
BRYANT, P.J., and SHAW, J., concur.
[1] The purpose of such insurance is to ensure payment of the mortgage loan in the event of the insured's death or disability.