located in a neighborhood otherwise exclusively residential.

It is therefore ordered that the defendant be enjoined from conducting his said business on the premises in question and that he cease so to do within six months after the entry of this decree.

*Decree accordingly.*

RICHARDS and WILLIAMS, JJ., concur.

THE ROYAL INDEMNITY CO. *v.* GOODMAN, A MINOR, ET AL.

( Decided March 11, 1929.)

*Mr. John H. McNeal,* for plaintiff in error.
*Mr. Paul Howland* and *Messrs. Bloomberg & Wolf,* for defendants in error.

LEVINE, J. Error proceedings are prosecuted from the decision of the common pleas court, wherein the defendant in error, Sam Goodman, a minor, after a trial by jury, recovered a judgment against plaintiff in error.

It appears from the record that on June 3, 1922, defendant in error Eli A. Tischman purchased an automobile on the installment plan and gave a mortgage for the unpaid balance of the purchase price; that, on the same date, Tischman, the mortgagor, arranged as to the issuance of a fire and theft policy of insurance in his favor to protect the mortgagee as to the payment of the balance secured by mortgage.

It is alleged in the petition that on the same date defendant in error Tischman arranged with plaintiff in error for public liability insurance under a parol contract of insurance against loss for injuries inflicted upon any person by said Tischman in the operation of his automobile. This allegation is denied in the answer of plaintiff in error.

On June 13, 1922, Tischman, in the operation of his automobile, injured defendant in error Sam Goodman. On June 19, 1922, Tischman paid plaintiff in error for the liability insurance, which payment was accepted by plaintiff in error after notice of the accident and after knowledge that Tischman claimed liability insurance under parol contract.

Plaintiff in error retained the payment until some time in November, 1922. About two months after the accident, plaintiff in error forwarded to Tischman, through the solicitor who placed the insurance, a written policy of automobile public liability insurance, which bore the date of June 20, 1922, which, Tischman, through his attorney, refused to accept, and which he returned to plaintiff in error, who has retained same ever since. As a result of the accident, in a suit instituted by Goodman against Tischman, a final judgment was recovered against Tischman in the sum of $7,000. No error proceedings

from said judgment were prosecuted, and the same stands unmodified, unreversed, and in full force and effect. Said judgment was rendered October 23, 1923. On March 1, 1924, defendant in error Goodman instituted suit against plaintiff in error, alleging in his petition that Tischman was insured by the company on the date of the accident. Said suit was filed by Goodman under favor of the provisions of Sections 9510-3 and 9510-4, General Code of Ohio. These sections of the Code, which permit suit by Sam Goodman against the insurance company, read as follows:

"Sec. 9510-3. In respect to every contract of insurance made between an insurance company and any person, firm or corporation by which such person, firm or corporation is insured against loss or damage on account of the bodily injury or death by accident of any person for which loss or damage such person, firm or corporation is responsible, whenever a loss or damage occurs on account of a casualty covered by such contract of insurance, the liability of the insurance company shall become absolute, and the payment of said loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, or damage or death occasioned by such casualty. No such contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured, after the said assured has become responsible for such loss or damage or death, and any such cancellation or annulment shall be void.

"Sec. 9510-4. Upon the recovery of a final judgment against any firm, person or corporation by any person, including administrators and executors,

for loss or damage on account of bodily injury or death, if the defendant in such action was insured against loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance between the insurance company and the defendant applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in a legal action against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment.''

Plaintiff in error asserts that it was entitled to a directed verdict in its favor, and that the trial court committed error in overruling its motion for a directed verdict. This motion for a directed verdict by plaintiff in error was based upon two grounds: First, that there is no evidence showing the existence of a liability contract of insurance between defendant in error Tischman and plaintiff in error; second, that, even conceding that there was a parol agreement as to a liability contract of insurance between the aforesaid parties, under the decisions of this state a parol contract of insurance is of no validity whatsoever, and, in order to give force and effect to a contract of insurance, so as to hold the insurance company to its terms, that the same must be reduced to writing in the form of a policy and subscribed by certain officers of the company.

On the question as to whether any evidence was offered showing the existence of a parol contract between the parties, it appears that on June 3, 1922, the Royal Indemnity Company was represented in

Cleveland through its general countersigning agent, the Davis & Farley Company, and that one Charles F. Thain had charge of the casualty department of the Davis & Farley Company. It further appears that in May, 1922, Thain engaged one H. M. Lind, credit manager for the Willys-Overland Company of Cleveland, on a commission basis to solicit and procure for the Davis & Farley Company fire, theft, and public liability insurance in connection with the sale of automobiles by the Willys-Overland Company of Cleveland. Quoting from the testimony of Mr. Lind:

"Q. Well, what if anything did you have to do with liability insurance? A. Personally, under an arrangement with Davis & Farley, I was engaged by them on a percentage basis of the premium to handle such insurance as I could obtain for them. It had nothing whatever to do with Willys-Overland, however.

"Q. You say that you made arrangement with The Davis & Farley Company to be paid for business you could place with them. Do you recall who you talked with or who made that arrangement with you? A. Mr. Thain.

"Q. And about when was that, as you recall? A. The exact date I haven't available, but it was in the month of May, some time early in the month.

"Q. 1922? A. 1922.

"Q. You know who Mr. Thain was, I suppose? A. Quite clearly; I knew who he was at that time; I had not had any dealings with him previous to that time.

"Q. Where did you see him? Did he come to your place? A. At my office.

"Q. And was the arrangement made at his suggestion or yours? Did you ask for him or did he come there? A. I was solicited by a number of insurance men, their names unknown at the present time; our fire and theft insurance, if I may speak in my own words, as I said, had to be bought by the purchaser and as a matter of convenience to the purchaser I would ask him if he had any particular preference as to who would handle his fire and theft insurance. If not, I would be glad to take care of it for him. I was handing that insurance business to such insurance companies as would come in. I got no remuneration, just an accommodation to the purchaser, a great many of them would ask me if I could do that, if I would like to handle it for them.

"Q. That was the condition that obtained prior to Mr. Thain coming to see you? A. Yes.

"Q. Now, when Mr. Thain came to see you from The Davis & Farley Co., you made an arrangement to throw all business that you could to The Davis & Farley Co.? A. Mr. Thain showed me where it would naturally be to my benefit to place it with his firm, and I agreed to do so.

"Q. And he was to pay you a certain commission for all business you threw them? A. A certain commission for all business I placed through them after the date of that agreement.

"Q. It is immaterial, I guess, but what was the commission that you were to be paid? A. The commission on fire and theft insurance was 15 per cent, and, later on, as I got some liability insurance, that was ten per cent, if I recall correctly.

"Q. Ten per cent. of the premium? A. Ten per cent. of the premium.

"Q. And on the renewals, was there anything coming to you? A. Well, I never got that far."

Thain, who was called as a witness for plaintiff in error, admitted that he called on Lind to solicit insurance and made an agreement with him whereby, for a commission, he was to give his insurance to the Davis & Farley Company.

On June 3, 1922, the date that Tischman purchased his automobile from the Willys-Overland Company, according to the usual custom Tischman was required to furnish to the automobile company fire and theft insurance for its protection. Lind, credit manager for the Willys-Overland Company, offered to take care of same for Tischman. Tischman requested public liability insurance in addition to fire and theft, and he asked Mr. Lind to procure the same. In the presence of Mr. Tischman, according to the testimony, Mr. Lind telephoned to the Davis & Farley Company, and inquired as to the rates of public liability insurance. Upon ascertaining the rates, Lind apprised Tischman concerning the same. Tischman thereupon ordered public liability insurance, within the limits of $10,000. Lind immediately ordered both fire and theft and public liability insurance from the Davis & Farley Company for Tischman.

Lind stated on the witness stand that, when he telephoned the Davis & Farley Company concerning rates on public liability insurance, he talked with a Mr. Henry; that Mr. Henry told him that his end of the business was limited to fire and theft; that the matter of liability insurance must be referred to a Mr. Thain, who was in charge of same; that he got in touch with Mr. Thain and secured the in-

formation from him. He stated that Mr. Thain inquired as to what kind of liability insurance Mr. Tischman wanted, whether it was a "5—10," as they term it, or a "10—10," meaning in thousands of dollars. Upon imparting the information to Mr. Tischman, he decided to take out a public liability insurance policy usually described as a "10—10." Mr. Lind informed Mr. Thain as to the kind of insurance Mr. Tischman wanted, and Mr. Thain told him that he would be taken care of, and that he would have him covered.

We quote the exact language of Mr. Lind's testimony:

"Q. And what did he say to you with reference to the casualty liability as to whether he was to be covered or not? A. Oh, he told me distinctly that he was covered."

This testimony of Lind was fully corroborated by the testimony of Tischman, who, according to the testimony, was standing at Lind's desk at the time the insurance was placed.

We are unable to see, despite the conflict in the record on this point, that there is a total want of evidence supporting the claim of the defendant in error that a parol contract of insurance was entered into between Mr. Tischman and plaintiff in error on June 3, 1922. It follows, therefore, that the trial court was correct in overruling the motion of plaintiff in error for a directed verdict upon the ground that there was no evidence tending to substantiate the claim of defendant in error that there was a parol contract of insurance entered into between the parties on June 3, 1922.

In support of the second ground, namely, that a

parol contract of insurance is of no validity whatsoever under the law of Ohio, we are cited principally to the case of *Cockerill* v. *Cincinnati Mutual Ins. Co.,* 16 Ohio, 148.

It is held in the *Cockerill case* (page 164):

(1) That a policy of insurance must be in writing.

(2) That a parol contract of insurance is unknown to the laws of the state of Ohio.

The last word on the subject of parol contracts of insurance is found in *Hartford Fire Ins. Co.* v. *Whitman,* 75 Ohio St., 312, 79 N. E., 459, 9 Ann. Cas., 218. We quote from the syllabus:

"1. A parol contract of insurance, as distinguished from a parol agreement to issue a policy, must not be executory, but must take effect *in præsenti.*

"2. In order to establish the relation of insurer and insured, in parol, as existing before the delivery of the policy, the plaintiff must do so by full and clear proof."

Taking the syllabus above quoted as our guide, there can no longer be any question in Ohio that a parol contract of insurance is valid and binding upon the parties.

Plaintiff in error also relies upon Sections 5438 and 9587, General Code of Ohio, which read as follows:

Section 5438. "An insurance company or agent legally authorized to transact insurance business in this state shall not write, place or cause to be written or placed, a policy, renewal of policy or contract for insurance upon property, situated or located in this state, except through a legally authorized agent in this state, who shall countersign all policies so is-

sued and enter the payment of the premium upon his record. The writing, renewal, placing or causing to be written or placed of a policy of insurance, in any other manner or form is a violation of the law providing for the payment of taxes by foreign insurance companies doing business in the State of Ohio, as set out and provided in this chapter. Provided, that any authorized agent of an insurance company duly authorized to transact business in this state may procure the insurance of risks or parts of in other like companies duly authorized to transact business in this state, and may pay a commission thereon to such agent. But such insurance shall be consummated through a duly licensed resident agent only of the company taking the risk. Provided further, that any authorized agent of an insurance company duly authorized to transact business in this state may accept business from such insurance brokers only as duly authorized and licensed as provided in Section 644-2, and such agent may pay a commission thereon to such broker.''

Section 9587. ''Policies or contracts of insurance made or entered into by the company may be made either with or without its seal. They shall be subscribed by the president or such other officer as the directors designate for that purpose, and be attested by the secretary. When so subscribed and attested, they shall be obligatory on the company.''

It is urged, therefore, that the language of the statute necessarily presupposes that the contract, the policy of insurance, shall be in writing. In answer to this latter claim, it may be stated that these sections which prescribe the manner in which written policies of insurance shall be executed refer only

to the manner in which the final written policy shall be executed. It was held in *Dayton Ins. Co.* v. *Kelly,* 24 Ohio St., 345, 15 Am. Rep., 612, that:

"Where the charter confers upon an insurance company power 'generally to do and perform all things relative to the object of the association,' and provides in a subsequent section that 'all policies or contracts of insurance' shall be subscribed by the president or some other officer designated by the board of directors for that purpose, the latter provision does not disable the company from binding itself by contracts for policies and immediate insurance executed in other modes and by other agents, but merely prescribes the manner in which the final contract or policy shall be executed."

In the absence of statutes requiring insurance contracts to be in writing, it has been generally held that oral contracts of automobile insurance are legal and binding, and so far as the law of Ohio is concerned, an insurance contract does not differ from other contracts, and, if the minds of the parties have met in regard to the essential part of the agreement, it does not matter whether the form of the contract is written or oral, so long as the terms of the contract are fully specified as to the time when the risk is to attach, the amount of indemnity, and the premiums.

An analysis of the record shows that the question which was presented in the trial of this case was: Does the evidence offered in this case tend to show that the Royal Indemnity Company entered into an oral contract with Mr. Tischman on the 3d day of June, 1922, covering the subject of public liability, and was such oral contract subsisting between the

parties at the time Tischman's automobile injured Sam Goodman? We hold that the trial court was correct in overruling the plaintiff in error's motion for a directed verdict in its favor and in submitting this question to the jury for its determination.

Another assignment of error is strenuously urged by plaintiff in error, namely, that the court committed error in its general charge to the jury on the subject of the burden of proof, and also that the court committed error in refusing to charge the jury, at the request of plaintiff in error, that the defendant in error was required to introduce full, clear, and convincing proof as to the issues raised in the case, as a matter of law, before defendant in error would be entitled to a verdict.

We quote from the general charge of the court:

"Now, the burden of proof in this case is upon the plaintiff, Samuel Goodman, and before the plaintiff would be entitled to recover a verdict at your hands he must prove to you by a preponderance of the evidence the material allegations of his petition. In order to entitle the plaintiff to recover in this action he must prove to you by a preponderance of the evidence that on June 13, 1922, at the time of the accident to the Goodman boy, the defendant Tischman was insured against loss or damage on account of bodily injury of any person caused by the accident of Tischman. If the plaintiff does prove these matters and things to you by a preponderance of the evidence then he would be entitled to recover a verdict at your hands against the defendant in the sum of $7000.00, together with interest thereon from the 23rd day of November, 1923, up to the present time. If the plaintiff fails to prove these

matters to you by a preponderance of the evidence, then the plaintiff cannot recover, and, in such event, your verdict should be for the defendant.''

It will be seen from the above that the court told the jury that the burden was upon the plaintiff to establish the material allegations of his petition by a preponderance of the evidence. Plaintiff in error, through its counsel, requested the trial court to correct his general charge to the jury as to the burden of proof, and to state to the jury that the plaintiff was required to produce full, clear, and convincing proof as to the issues raised in the case before he would be entitled to a verdict. The court refused the request, and an exception was noted. It is claimed that, in charging on the question of burden of proof, and in refusing to comply with plaintiff in error's request, the trial court ignored and disregarded the mandate of the Court of Appeals in the case of *Goodman* v. *Royal Indemnity Co.*, 24 Ohio App., 357, 157 N. E., 311.

In the first trial of this same case between the same parties, the trial court directed a verdict in favor of the plaintiff in error. Error proceedings were prosecuted to the Court of Appeals of Cuyahoga county, wherein said judgment of the common pleas court was reversed. Quoting from the opinion of Sullivan, J., in *Goodman* v. *Royal Indemnity Co.*, *supra*, at page 364 of 24 Ohio App., 157 N. E., 313:

''Under such a claim the plaintiff had a right to recover, if the proof was clear and convincing, because that is the degree which is required of this character of evidence. These elements, in addition to the fact that the policy of insurance was refused, instead of unconditionally accepted, make applicable,

we think, the principle laid down in the case of *Hartford Fire Ins. Co.* v. *Whitman,* 75 Ohio St., 312, 79 N. E., 459, 9 Ann. Cas., 218, the syllabus of which we quote:

" 'A parol contract of insurance, as distinguished from a parol agreement to issue a policy, must not be executory, but must take effect *in præsenti.* In order to establish the relation of insurer and insured, in parol, as existing before the delivery of the policy, the plaintiff must do so by full and clear proof'."

Plaintiff in error contends that the above quotation establishes the law of the case, and requires the trial judge to charge the jury that the plaintiff could not recover in this case unless the evidence was clear and convincing, indicating thereby a higher degree of proof than a mere preponderance.

The rule as to the law of the case was laid down in *Gohman* v. *City of St. Bernard,* 111 Ohio St., 726, 146 N. E., 291, 41 A. L. R., 1057, in which the doctrine is clearly stated, quoting 4 Corpus Juris, 1093, as follows:

"It is a rule of general application that the decision of an appellate court in a case is the law of that case on the point presented throughout all the subsequent proceedings in the case in both the trial and the appellate courts, and no question necessarily involved and decided on that appeal will be considered on a second appeal or writ of error in the same case, provided the facts and issues are substantially the same as those on which the first decision rested."

An analysis of the decision of this court in the former case will show, as appears in the journal

entry, "that in the opinion of the Court of Appeals substantial justice has not been done the party complaining, as shown by the record of the proceedings and judgment under review, and the judgment of said Court of Common Pleas is reversed for error in rendering judgment on statements of counsel; no other error appearing in the record, this cause is remanded to said court of common pleas for further proceedings * * *."

The ground of reversal was that this court was of the opinion that the common pleas court committed error in directing a verdict upon the state of the record as it then came to this court. It appears that no evidence was introduced; no question of evidence or degree of proof was involved; and that the judgment of the court in sustaining plaintiff in error's motion for a directed verdict was based entirely upon the petition and statement of counsel in the former trial. In the present case the record shows a complete trial upon the evidence and the law. In other words, the statement found in the opinion rendered in the former case before this court, as to the degree of proof not having been involved in the case as it then stood, and not having been necessary in order to reach the conclusion which the court reached, cannot be invoked as the law of the case so as to make it binding upon the trial court in the second trial, which is now before us for review.

There can be no question that, if the aim of a lawsuit is to enforce specific performance of an oral agreement to issue a policy, before a court of equity would grant a decree of specific performance the evidence presented to it must be full, clear, and con-

vincing, as is required in all cases seeking equitable relief.

Where the prayer seeks a money judgment only, which is triable to a jury, the rule as to the burden of proof is that the plaintiff must establish the material allegations of his petition by a preponderance of the evidence.

The case at bar being a suit at law, triable to a jury, must be treated the same as other money only cases.

We hold, therefore, that the charge of the court as to the degree of proof correctly stated the law. Once we eliminate from this case the question of the binding effect of parol contracts of insurance, and come to the conclusion that such parol contracts of insurance are valid and binding between the parties, the entire case resolves itself into a question of fact, namely, Do the facts proven in this case tend to show that the Royal Indemnity Company had entered into a parol contract with Mr. Tischman covering the matter of public liability insurance, and was such contract subsisting at the time of the accident which resulted in the injuries to Sam Goodman?

Upon a fair presentation of this question to the jury, the jury was within its province in answering that question in the affirmative, and there is nothing left for our consideration except whether or not the verdict of the jury is manifestly against the weight of the evidence. A review of the record lends strong probability as to the correctness of the jury's conclusion, and we are unable to interfere with said conclusion of the jury.

The judgment of the common pleas court will therefore be affirmed.

*Judgment affirmed.*

VICKERY, P. J., and SULLIVAN, J., concur.