Littell, Appellee, v. Republic-Franklin Ins. Co., Appellant.

[Cite as Littell v. Republic-Franklin Ins. Co., 1 Ohio App. 2d 524.]

(No. 306—Decided March 17, 1965.)

*Messrs. Wiedemann & Wiedemann,* for appellee.

*Mr. Joseph B. Grigsby,* for appellant.

Guernsey, J. Defendant insurance company appeals on questions of law from a judgment of the Common Pleas Court

of Union County entered on a verdict directed on plaintiff's motion at the end of the defendant's evidence, assigning as error the action of the trial court in sustaining the motion.

The action was for a declaratory judgment praying a declaration that defendant had contracted to insure plaintiff from loss by automobile casualty, that such contract was in force and effect on May 9, 1962, at the time and place of a collision involving plaintiff's car, and that the defendant company was liable under the provisions of its contract.

In answer defendant admitted that Charles O. Shearer "is a duly authorized agent of this defendant for the purpose of soliciting and writing automobile insurance," and alleged, among other things not here material, "that on or about the 16th day of November, 1961, plaintiff offered to purchase a policy of automobile casualty insurance from defendant's agent, Charles O. Shearer and on said date Charles O. Shearer issued a temporary binder and forwarded the application for a policy in conformity to said binder to this defendant's home office in Columbus, Ohio."

In answer to interrogatories attached to plaintiff's petition defendant stated that "no policy of automobile casualty insurance coverage was ever issued or written by Republic-Franklin Insurance Co. insuring an automobile of" plaintiff and stated that "a true copy of the binder is attached hereto and submitted." Attached is a printed document (admitted on trial as plaintiff's exhibit 3) titled "Insurance Application" with the usual information supplied by an insurance applicant typed thereon. At the place provided for the signature of the insured appears the signature of Charles O. Shearer and the date 11-16-61. The typed policy period, to wit, "Nov. 16, 1961 to May 16, 1962" has been altered in ink to read, "Nov. 16, 1961 to 12/11/61." In a column headed "Premiums" appear inked amounts pertaining to each of the various types of coverage, i. e., bodily injury liability, property damage liability, comprehensive and collision, which amounts are then totalled in ink to show a "Total Policy Premium" of $47.33. Written across the face of this entire document in large inked script, with an inked arrow pointing to the aforesaid total, are the words and figures, "Binder Charge 11-16-61 to 12-11-61."

On trial, the court refused to admit any evidence as to notice by the defendant of termination of coverage or of refusal by the defendant of coverage by reason of alleged false representations of the plaintiff and stated in the record: "To clarify the court's position, I'll state for the record that in the court's opinion the only contract before this court is this alleged binder, which is marked as Plaintiff's Exhibit '3,' and that there is no provision in that agreement for cancellation of it during the six months period." Notwithstanding this rejection defendant company proffered all the testimony which it had to offer on such issues.

Without consideration of the proffered testimony and considering only that testimony admitted into evidence by the trial court, Mr. Shearer's testimony showed, without dispute, that on October 28, 1961, he was the agent for the defendant and two other insurance companies in the business of writing automobile casualty insurance; that on that date plaintiff, Littell, came to his office for the purpose of obtaining insurance on his car and supplied Shearer with information as to his name, age, kind of car, etc., which information Shearer filled in on an American States Insurance Company application form signed by Littell and then sent to that company; that at that time he computed the six months' premium "on the basis of the classification in the record," and came up with his "own figures of $104.32," which amount he collected from Littell in two payments, one received on October 28th and the other on November 2, 1961; that on the former date he advised Littell that he had coverage starting as of noon; and that in time American States turned down the application and it was returned to Shearer.

The following other pertinent testimony of Shearer was admitted into evidence and appears, as indicated, in the record:

p. 13. "Q. Now, you then submitted as an agent and—representing Mr. Littell and also the Republic-Franklin Insurance Company, a binder policy or contract of insurance with Republic-Franklin Insurance Company, is that not correct? A. Yes."

p. 42 "Q. Then what did you do? A. I, in turn, took the information off of the [American States] application and mailed it in to Republican-Franklin.

"Q. And Mr. Littell at that time did not know that he had been turned down by American States when you made the application to Republic-Franklin? A. No.

"Q. I'll hand you what's been marked Plaintiff's Exhibit '3.' * * * Will you tell the court whether or not that is what you refer to as the application for insurance that you sent to Republic-Franklin? A. That's right."

p. 14 "Q. Well, this is your signature? A. Yeah.

"Q. This is the application form and the binder form that you submitted to Republic-Franklin, is that correct? A. That's right. Un-huh.

"Q. Now, would you tell the jury under No. 2 there what the dates that you typed in were? A. November 16th, '61.

"Q. Until what date? A. May 16th, '62.

"Q. Well, now, who marked this on here? A. That had to be the company office.

"Q. This writing that is over the front of the policy with the exception of your signature on there was put in by the company office, is that not correct? A. That's right."

p. 15 "Q. And so that on November 16th, 1961, you had written a binder policy for a period of six months with Republican-Franklin Insurance Company, had you not?
"* * *

"A. I wrote that application, that's right.

"Q. And that was a binder? A. Which is a binder, right."

The following pertinent testimony of Littell was admitted into evidence and appears, as indicated, in the record:

p. 19 "Q. Tell the jury, Larry, in your own words what happened on October 28th when you saw Mr. Shearer. A. Well, I went in Mr. Shearer's office and inquired about purchasing insurance on my car.
"* * *

"Q. And tell us briefly what the conversation was as you remember it. We understand that you wouldn't remember every word, but what took place while you were there? A. Well, he said that he thought he could fix me up, and he filled out this binder policy, and he asked me some questions."

p. 21 "Q. And where was it that you next saw him or about

when? A. Well, about two weeks later I seen him in Kay's Restaurant one morning.

"Q. And what did he—did you have any words with him at that time? A. Yes, sir. I was settin' there and he came over and informed me that he had sent in with this first company and they'd refused it, and he said that he would take care of it, that he was going to send it in with another company.

"Q. Did he advise you about your coverage? A. Yes, sir, · He said I was covered."

p. 24 "Q. You never received any policy or any binder or anything in writing from Mr. Shearer other than the receipts, did you?"

p. 25 "A. No, sir.

"Q. Now, when you went in to Mr. Shearer on October 28th, 1961, you said that Mr. Shearer told you he thought he could fix you up with insurance, is that right? A. Yes sir.

"Q. Now, why was there any question about whether or not he could fix you up with insurance at that time? A. I wouldn't know."

The trial court's duty in the disposition of the plaintiff's motion for a directed verdict is succinctly stated in 4 Ohio Jurisprudence 2d 422, Appellate Review, Section 1085:

"Under the modern rule which, since its pronouncement, has been scrupulously followed by the Ohio courts, upon a motion to direct a verdict, if the trial court, *after construing the evidence most strongly in favor of the person against whom the motion is directed,* finds that upon any essential issue reasonable minds could come to but one conclusion upon the evidence submitted and that such conclusion is adverse to such party, it should direct a verdict against him, and not allow the jury to speculate upon the question; but if reasonable minds may reasonably reach different conclusions, or draw different inferences upon any question of fact, the motion should be denied and the case submitted to the jury." (Emphasis added.)

The trial court sustained the motion on the basis of its view that when the agent, Shearer, received the premium which he had computed, advised the plaintiff that he was covered, and completed and sent in the application form (plaintiff's exhibit

3), there was thereby created, as a matter of law, an irrevocable insurance contract for the period of six months originally set forth in such form, and that evidence of any contract for a lesser period or cancellation of the six months contract was irrelevant.

Defendant insurer's answer acknowledges that Shearer was its agent "for the purpose of soliciting and writing automobile insurance," and the provisions of Section 3905.01, Revised Code, operate to bind defendant company for all of his acts "within his apparent authority." This agency, being admitted, is not enlarged, or lessened, by the provisions of Section 3929.27, Revised Code, bearing on the agency of an insurance solicitor. In the face of his express and his apparent authority we might have agreed with the trial court in its conclusion as to the length and irrevocability of the insurance contract, had Shearer informed the plaintiff when, by plaintiff's testimony, they met in Kay's Restaurant, that plaintiff was covered for a period of six months. The statement as to coverage made by Shearer on October 28, 1961, pertained to another of Shearer's principals, American States Insurance Company, as Littell knew when he signed an American States application form, and such statement could not have been binding upon defendant insurer.

However, Littell's own testimony as to what transpired on October 28th, as well as thereafter at Kay's Restaurant, which on his motion for a directed verdict must be construed most strongly in favor of the defendant insurance company, shows that Shearer never advised Littell that he was covered by insurance for any specific period of time. It shows instead that Shearer stated that "he *thought* he could fix * * * [Littell] up" with insurance, that "he had sent in with this first company and they'd refused it," "that he was going to send it in with another company," that Littell never received "any binder or anything in writing from Mr. Shearer other than the receipts," and that when Shearer told him on October 28, 1961, that he "thought he could fix * * * [Littell] with insurance," "* * * [Littell] wouldn't know" why there was "any question about whether or not he [Shearer] could fix * * * [Littell] up

with insurance at that time." The very fact that Littell was made aware at Kay's Restaurant that one company had refused his application and that Shearer "was going to send it in with another company," *in futuro*, tended to show that Littell's negotiations with Shearer for a six months insurance contract were conditioned upon acceptance of the contract by the home office of the insurer and that Shearer was not exercising any express, or apparent, authority to himself bind the insurer for a six months term, and, further, tended to show that any coverage which Shearer, as agent, contracted for on behalf of his principal was to be temporary and only while the application was being processed.

In 44 Corpus Juris Secundum 497, Insurance, Section 49, it is said:

"The term 'binder' has a well-known significance in the parlance of insurance contracts, and a binder or a binding slip is merely a written memorandum of the most important terms of a preliminary contract of insurance intended to give temporary protection pending the investigation of the risk of insurer, or until the issuance of a formal policy; a contract of insurance in praesenti, temporary in its nature, intended to take the place of an ordinary policy until one can be issued; a short method of issuing a temporary policy for the convenience of all parties, to continue, unless sooner canceled, until the execution of a formal policy."

In 44 Corpus Juris Secundum 957 *et seq.*, Insurance, Section 230, it is said:

(a) "The preliminary contract intended to protect the applicant pending investigation of the risk or until the policy can be properly issued is an important form of insurance contract."

(d) "Preliminary contracts of insurance are necessarily of the most informal character; they may be oral, partly oral, or written, and are frequently evidenced by binders or other memoranda."

(e) "* * * A contract of temporary present insurance is terminated by the issuance, delivery, and acceptance of a policy, and if the policy is not issued, delivered, and accepted, and the contract is not otherwise terminated, the contract continues

until, and only until, the time fixed thereby for its termination, which is sometimes the expiration of a specified period of time, unless the course of conduct and dealings between the parties discloses an intention to have the insurance continue in effect notwithstanding the expiration date provided for in the binder. * * * *Where no time is specified and the applicant is simply told that he is 'covered,' the temporary insurance commences at that instant, and continues for such a length of time as is reasonable for the issuance of the policy* or the removal of some temporary impediment to a complete and formal contract of insurance. It has been held, however, that the applicant must be notified of a rejection so that he may have an opportunity to obtain insurance elsewhere." (Emphasis added.)

From the undisputed evidence and particularly from the testimony of plaintiff, Littell, and construing the evidence most strongly in favor of the defendant insurance company, it is readily apparent, and it is the opinion of this court, that reasonable minds might reasonably reach different conclusions. The jury might reasonably have concluded that an oral and temporary binder, as alleged in defendant's answer, was effected by the agent's statement that the applicant was covered, which coverage was to continue by virtue of the binder only until the application was processed by the home office of the defendant insurer and, if approved, until a formal policy was issued. Consistently, the jury might also reasonably have concluded that plaintiff's exhibit 3 was, in its inception, merely what it purported on its face to be, an *application* for the issuance of a six months policy of insurance which was being submitted for approval by defendant company at its home office, and that same was "accepted" by defendant company only for a period of time which would permit the plaintiff to make application for insurance to another company.

These, therefore, constituted questions of fact which could not be withdrawn from consideration by the jury, and the court committed error prejudicial to the defendant in so doing. Such being the case, the court committed further error in excluding from the consideration of the jury the conflicting evidence as to whether the plaintiff was notified of a rejection of his applica-

tion so that he might have an opportunity to obtain insurance elsewhere. If such notice were given, as the agent Shearer claimed in his proffered testimony, then Shearer's failure to return the unearned premium to plaintiff prior to the time of the collision loss would not estop the defendant from denying liability as insurer. If the notice were not given then the defendant may have been estopped from denying liability without regard to the amount of the premium and without regard to its retention by Shearer.

For the prejudicial error of the trial court in directing a verdict for the plaintiff on the evidence which it admitted and considered, the judgment of the trial court is reversed and vacated and the cause is remanded thereto for new trial and for further proceedings as provided by law.

*Judgment reversed and cause remanded.*

MIDDLETON and RUTHERFORD, JJ., concur.

RUTHERFORD, J., of the Fifth Appellate District, sitting by designation in the Third Appellate District.