CLEMENTS ET AL., APPELLANTS, *v.* OHIO STATE LIFE INSURANCE COMPANY ET AL., APPELLEES.

(No. C-850229 — Decided April 30, 1986.)

*Carroll, Burke, Henkel, Haverkamp & Smith* and *Steven M. Magas,* for appellants.

*Strauss, Troy & Ruehlmann Co., L.P.A.,* and *Ernest A. Eynon II,* for appellee Ohio State Life Ins. Co.

*Rendigs, Fry, Kiely & Dennis, Thomas J. Leksan* and *Charles D. Mays,* for appellee Daniel C. Finke.

BLACK, J. In this appeal, plaintiffs assign as error the trial court's granting of summary judgment in favor of both defendants, objecting in the first assignment to the judgment in favor of defendant Finke and in the second assignment to the judgment for defendant Ohio State Life Insurance Company. We agree that there are genuine issues as to material facts and that, therefore, summary judgment was improperly granted. Accordingly, we reverse and remand for further proceedings.

The unresolved issues pivot around the effective date of health and accident insurance for which plaintiffs applied to the insurance company through Finke, the representations he is alleged to have made, and the binding effect of those representations, if any, on the insurance company.

Plaintiffs Gene and Mary Alice Clements sued defendants Ohio State Life Insurance Company ("Ohio State Life") and Daniel C. Finke, who was an insurance agent for Ohio State Life at the time the controversy arose, alleging that defendants negligently delayed either delivering a policy of health insurance to plaintiffs or informing them that their application for health insurance had been rejected. Plaintiffs claimed that defendants were estopped by virtue of this unreasonable delay from denying their acceptance of the contract for insurance, that they were jointly and severally liable for medical expenses incurred by plaintiffs after the effective date of the policy, and that they were subject to punitive damages for acting in bad faith.

The trial court granted summary judgment in favor of the insurance company and the agent. According to Civ. R. 56(C), summary judgment may only be granted if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 4 O.O. 3d 466, 364 N.E. 2d 267. Those facts set forth in the "cognizable documents," *Spier* v. *American Univ. of the Caribbean* (1981), 3 Ohio App. 3d 28, 28-29, 3 OBR 29, 31, 443 N.E. 2d 1021, 1023, must be evaluated most favorably to the party opposing the motion, and the motion should not be granted unless reasonable minds can come to only one conclusion. *Hounshell* v. *American States Ins. Co.* (1981), 67 Ohio St. 2d 427, 433, 21 O.O. 3d 267, 271, 424 N.E. 2d 311, 315; *Jackson* v. *Kings Island* (1979), 58 Ohio St. 2d 357, 360, 12 O.O. 3d 321, 323, 390 N.E. 2d 810, 813. A detailed review of the facts of this case, with attention to the important dates, is necessary to an explanation of our conclusion that these requirements have not been satisfied.

The factual background for these claims began to develop when Gene Clements telephoned Daniel Finke to inquire about group health insurance. Clements states this phone call was placed on July 7 or 8, 1982; Finke asserts it was no earlier than July 12. Clements stated that he had obtained Finke's name from his (Clements') brother-in-law and that he wished to acquire the same type of Ohio State Life policy that his brother-in-law had purchased. A meeting was arranged for the purpose of completing the insurance application and tendering the first premium check. The Clementses maintain that this meeting was set for July 8 or 9, that Finke did not show up on this date, and that a second meeting date had to be set up. Finke denies these allegations and asserts that the original meeting date was July 15.

On July 15, Gene Clements was out of town, and Daniel Finke met with Mary Clements. At that meeting,

Finke filled out an Employer Application for Group Insurance Coverage, listing as the employer Murphy & Murphy, a Los Angeles company with which Gene Clements was associated as a local distributor. Mary Clements signed Gene Clements's name to this application, which identified him as president, presumably of the local distributorship. Mary also completed and signed Gene's name to an Individual Enrollment Application, purporting to place an order for medical coverage for Gene, Mary and their three children.

The following printed statement appeared above the signature on the Individual Enrollment Application:

"I hereby certify that all the information on this card is correct to the best of my knowledge and is offered to Ohio State Life *as an inducement to grant insurance.* I request the insurance for which I am now eligible or *for which I may become eligible* under the provisions of the policy or policies issued to the trustees by the Ohio State Life Insurance Company * * *." (Emphasis added.)

Language in the Employer Agreement on the Employer Application also indicated that the signatory was "mak[ing] *application* to become a participating Employer of the Ohio State Life Group Insurance Trust Fund" and agreed to be the fiduciary for the plan, *"if approved."* (Emphasis added.) In addition, a pamphlet that Finke left with Mary Clements contained the following statement: "Ohio State Life reserves the right to deny coverage to employers or employees that exhibit special industry hazards or do not meet acceptable risk standards." This sentence appeared in fine print at the bottom of the last page of the pamphlet.

The Employer Agreement on the Employer Application was dated July 15, 1982, and was followed by the words "to be effective," then a choice of "1st" or "10th" was provided, "day of the month following Home Office approval." An "X" was written in the box next to "10th." Immediately after these words, Finke had written "7-10-82 effective date." This notation highlights the major factual dispute between the parties.[1]

The Clementses claim that Finke told them they would be covered as of July 10 and did not indicate that Ohio State Life would have to be consulted before that promise could be binding. Gene Clements stated in his deposition that when he agreed over the telephone to have Finke meet with Mrs. Clements while Mr. Clements was out of town, Finke told him the effective date of the policy would be July 10. According to Gene Clements, Finke dismissed the concerns Gene expressed by telling him not to worry, because he would be covered.

At her meeting with Finke, Mary Clements also gave Finke a check for the amount of the first monthly premium payment.[2] She testified that

---

[1] The effective date provision appeared on the form approximately as follows:

"To be effective [ ]1st [x]10th day of the month following Home Office approval.
7-10-82
effective date
[handwritten]"

[2] The premium check that Mary Clements gave Finke was negotiated on July 21, 1982, and a policy number had been noted on the face of the check. Clements testified that the check had been canceled and returned before Finke told him about the rejection. A check for the same amount was issued to Murphy & Murphy by Ohio State Life on August 2, 1982, and was forwarded to the Clementses by Finke together with a note dated August 6 and a copy of the rejection notice. The check from Ohio State Life was never cashed.

The Clementses assert that Ohio State

Finke told her at the end of the meeting that coverage had gone into effect as a result of her delivery of the first premium check to him. She said that he emphasized this assertion anecdotally by referring to one of her children who was riding his bicycle in the driveway and explaining, "[i]f your child would be riding their bicycle this afternoon and fall off and break their arm, you would be covered."

Finke has a different version of the events surrounding this application. He denies having known in advance that his meeting would be with Mrs. Clements alone or that the Clementses desired that coverage take effect as of July 10. Most importantly, he asserts that he explained to Mary Clements that their coverage would be subject to Ohio State Life's approval of their application, and he denies that he represented that coverage was effective upon his receipt of their check.

Mrs. Clements was admitted to Good Samaritan Hospital on August 1, 1982.[3] On August 5 or 6, according to Finke, he received a notice that Ohio State Life had rejected the Clementses' application for insurance. The rejection notice was dated July 26, 1982, and indicated that because the applicant had been in business for less than one month, the application would be reconsidered in one year, "subject to evidence of insurability, stability of employment and certification of employment." Finke says he telephoned Gene Clements the day he received the rejection notice and notified him that coverage had been declined; Clements recalled that conversation as occurring on August 2.

Nevertheless, the Clementses continued to send monthly premium checks to Ohio State Life, apparently on the basis that they believed themselves to be entitled to medical coverage as a result of Finke's alleged representations. However, they never received a policy, and on May 9, 1983, Ohio State Life issued a check in an amount equal to six monthly payments and forwarded it to Mary Clements together with a copy of the rejection notice and a handwritten speed memo stating that no policy had ever been issued. This check also was never cashed. Ohio State Life never paid for Mary Clements's hospital and medical expenses[4] and denied the claim for hospital expenses incurred by Gene Clements in October 1982. The Clementses then sued Finke and Ohio State Life for breach of contract and negligence.

---

Life's negotiations of this and future checks constituted an admission of the existence of coverage. This court has rejected a similar argument in *Gast* v. *West American Ins. Co.* (June 25, 1980), Hamilton App. No. C-790357, unreported.

[3] Allegations were raised and evidence introduced below to the effect that Mary Clements had a preexisting medical condition (cervical cancer) and that she knew of the possible existence of that condition and had sought medical treatment before she applied to Ohio State Life for coverage. This issue is governed by R.C. 3923.14, which sets forth the effect of false statements in health insurance applications on an insured's right to recovery. This provision only comes into play once coverage has been issued on the basis of the false application and only bars recovery in limited situations, the existence of which must be determined by a trier of fact. The issues on this appeal deal with the question of whether coverage was ever issued. In case these issues are decided affirmatively to plaintiffs on remand, defendants remain free to pursue their defense that plaintiffs are barred from recovering because their application contained false answers.

[4] Ohio State Life denies that any claim was ever filed for Mary Clements's medical expenses.

Clearly, many facts pertinent to this case are in dispute, most notably the allegation that Finke represented to the Clementses that coverage would be effective immediately upon delivery of the premium check to him. An insurance agent who advises a client that the coverage sought is in effect with the knowledge that the insurance company has not yet agreed to provide the coverage thereby incurs personal liability as an insurer. *Stuart* v. *National Indemn. Co.* (1982), 7 Ohio App. 3d 63, 7 OBR 76, 454 N.E. 2d 158. In addition, if the agent is negligent in failing to acquire coverage he has undertaken to procure, he may be liable for resulting damage. *Id.; Conley* v. *Postle* (App. 1961), 88 Ohio Law Abs. 148, 178 N.E. 2d 527. Therefore, whether Finke told Mr. and Mrs. Clements they would be covered once the application was completed and the premium paid as well as how quickly (on what dates) he acted upon their request for coverage are issues of fact material to these stated principles of law that are not resolved in the cognizable documents. Furthermore, upon resolution of those factual issues, another necessary factual decision will be whether Finke's conduct entailed an unreasonable delay and thus constituted culpable negligence. Consequently, a summary judgment was improperly granted in favor of Finke. The first assignment of error has merit.

Not only may an insurance agent be individually liable for misrepresentations or misconduct, but he also may bind the insurance company by his actions taken on its behalf within the scope of his apparent authority. *Coletta* v. *Ohio Cas. Ins. Co.* (1953), 96 Ohio App. 70, 54 O.O. 180, 121 N.E. 2d 148. The scope of an insurance agent's authority, apparent or actual, depends in part upon the level of his relationship with the company that is to issue the policy, as evidenced by the type of license issued him by the Superintendent of Insurance. An individual may be licensed as a general agent of a particular insurance company upon written notice by that company to the Superintendent of Insurance of its appointment of the individual to act as its agent and upon the satisfaction of certain other qualifications. R.C. 3905.01. A general agent ordinarily has the authority, *inter alia,* to sign, issue and deliver policies of insurance. *Coletta, supra,* 96 Ohio App. at 75-76, 54 O.O. at 183, 121 N.E. 2d at 152. An agent who is thus appointed and licensed has the power under the statute to bind the company by acts within his apparent authority. *Id.*

Apparent authority encompasses an agent's actions beyond the scope of the authority expressly granted him by the company, which the company nevertheless knowingly allows the agent to perform, see *Littell* v. *Republic-Franklin Ins. Co.* (1965), 1 Ohio App. 2d 524, 30 O.O. 2d 543, 205 N.E. 2d 580, or which comport with the company's holding out of the agent as its authorized and fully trustworthy representative. *Coletta, supra; Massachusetts Life Ins. Co.* v. *Eshelman* (1876), 30 Ohio St. 647. Thus, an agent who does not have the express authority to issue a policy of insurance may nonetheless by virtue of his apparent authority bind the company to a contract. *Cascioli* v. *Central Mut. Ins. Co.* (1983), 4 Ohio St. 3d 179, 180-181, 4 OBR 457, 458-459, 448 N.E. 2d 126, 127-128; *Coletta, supra; Palm* v. *Medina Cty. Mut. Fire Ins. Co.* (1851), 20 Ohio 529, reversed on other grounds (1855), 5 Ohio St. 107.

A more limited type of license may be issued to an individual employed by a duly licensed agent as a solicitor for the purpose of procuring, receiving or forwarding applications for health and accident insurance. R.C. 3905.02 and

3905.08. Such a license is stamped with the imprint "accident and health insurance license," and the holder is only entitled to procure applications for this type of insurance and to forward them to the specified company. He may not represent himself as an agent for the company but only as a solicitor for an authorized agent. However, he is to be "considered" as an agent of the insurer in a controversy between the insured and the insurer. R.C. 3923.141. Even though the express authority of a subagent or soliciting agent is more circumscribed than that of a general agent, his actions in the course of handling applications for coverage are representative in nature and thus are the acts of the company. *Nellas* v. *Manufacturers Cas. Ins. Co.* (1953), 96 Ohio App. 196, 54 O.O. 254, 121 N.E. 2d 651; *Krumm* v. *Jefferson Fire Ins. Co.* (1883), 40 Ohio St. 225, paragraph two of the syllabus; *Massachusetts Life, supra,* paragraph three of the syllabus.

Furthermore, it is clear that an agent may contract on behalf of an insurance company to issue temporary coverage of an applicant pending processing of his application. *Gettins* v. *United States Life Ins. Co.* (C.A. 6, 1955), 221 F. 2d 782, 57 O.O. 270; *Duncan* v. *John Hancock Mut. Life Ins. Co.* (1940), 137 Ohio St. 441, 19 O.O. 145, 31 N.E. 2d 88; *Prudential Ins. Co.* v. *Howard* (App. 1935), 18 Ohio Law Abs. 688. Such agreements are referred to as preliminary or temporary contracts or "binders." Although they are often evidenced by written receipts, they may be oral, in which case their existence must be proven by clear and convincing evidence. *Royal Indemn. Co.* v. *Goodman* (1929), 32 Ohio App. 316, 168 N.E. 61. See, also, *Palm, supra,* 20 Ohio at 537-538.

Sometimes, the effectiveness of a binder or an agreement for temporary insurance is expressly conditioned upon the fulfillment of certain requirements, such as the completion of a medical examination, *Gettins, supra,* or insurability under company rules, *Duncan, supra,* or approval of the application, *Leube* v. *Prudential Ins. Co.* (1947), 147 Ohio St. 450, 34 O.O. 377, 72 N.E. 2d 76,[5] and the duration of the temporary coverage may also be specified. *Littell, supra.* However, if the applicant is merely told he is "covered," and no time is specified for termination

---

[5] *Gettins* and *Leube* appear to hold that temporary coverage can no longer remain effective once the insurance company rejects the application. Finke argues that this rule operated to terminate coverage on July 26, 1982, the date appearing on Ohio State Life's rejection notice. However, in *Gettins,* the application for life insurance stated that it was incomplete until a medical examination was performed (no such language appeared on the application signed by Mary Clements), and the proposed insured failed to keep two appointments for a medical examination before he was killed in an automobile accident. In *Gettins,* the United States Court of Appeals for the Sixth Circuit, in discerning controlling Ohio law, relied on *Leube* for the principle that temporary coverage remains in effect until the application is rejected. However, *Leube* involved a written temporary contract for life insurance with language specifically conditioning coverage upon approval of the risk by the company and held that rejection of the application before the death of the proposed insured immediately terminated coverage. We are not inclined to extend this rule to a totally different fact pattern involving an oral agreement, where the factual issue of whether the agreement expressly imposed any conditions on the temporary coverage remains unresolved and where the cited authority itself cautions that a court's decision may only be interpreted in light of the underlying facts. *Leube, supra,* 147 Ohio St. at 456, 34 O.O. at 379, 72 N.E. 2d at 79.

of temporary coverage, coverage commences immediately and continues for a reasonable amount of time for issuance of the policy. *Id.* at 531, 30 O.O. 2d at 547, 205 N.E. 2d at 585. The mere presence of the language "if approved" on the application may be insufficient to render the agreement conditional. *Palm, supra,* 20 Ohio at 538.

The above review of various principles in the fields of agency and contract law, as applied in the realm of insurance law, has been a necessary backdrop to the determination of whether Ohio State Life was entitled to judgment as a matter of law. The rules cited have been applied throughout Ohio case law in markedly particularized fashion, tailored to the precise facts underlying each action. The charge of inconsistency has been raised. See, *e.g., Coletta, supra,* 96 Ohio App. at 79, 54 O.O. at 184-185, 121 N.E. 2d at 153-154. For this reason, it is a rare event when a controversy over the existence of an insurance contract can be resolved by summary judgment. In the instant case, we simply do not find the necessary factual support in the cognizable record for a judgment as a matter of law.

The evidence available to the court on the motions for summary judgment did little to shed light on the scope of Finke's authority, actual or apparent, to bind Ohio State Life. He was referred to in testimony by no more specific term than "agent." Finke testified that he was in the employ of the Paul Oliver Agency at the time he took the Clementses' application, but he failed to elucidate his assigned duties or to specify whether he held an

agent's or solicitor's license; in fact, he stated his belief that there was only one type of insurance license. He had given Mrs. Clements an Ohio State Life brochure bearing a seal with his name in bold letters, surrounded by an address and phone number and the words "life," "disability," "retirement plans" and "estate planning."[6] On the basis of this emblem, a trier of fact could conclude that Finke held himself out as a direct representative of Ohio State Life, rather than a solicitor employed by an insurance agency. Whether or not Ohio State Life concurred in this holding out would involve an inquiry that could not be determined upon the record before us.

In addition, the testimony concerning the terms of the purported preliminary coverage is in conflict. Finke claims that in his conversation with Mrs. Clements he conditioned immediate coverage on home office approval; she denies that any conditions were discussed. Relevant case law, as already noted, is wedded strictly to individual fact patterns and tells us no more than that temporary coverage may have been mandated if three conditions are fulfilled: (1) Finke represented that the insurance was in effect; (2) he was clothed, by virtue of his licensure, job description or a holding out by Ohio State Life, with the apparent authority to do so; and (3) any conditional language in the insurance application or brochure was overcome by the surrounding circumstances. This conflict may only be resolved by a trier of fact. Compare with *Gettins, supra, Coletta, supra,* and *Littell, supra,* where questions similarly dealing with issues of

---

[6] It was not possible to discern from the photocopy of the brochure contained in the record whether this label was printed directly on the brochure or was merely a sticker affixed thereto. Therefore, a question of fact existed as to whether Ohio State Life or Finke placed his name on the brochure, and if Finke did so, whether Ohio State Life acquiesced in the resultant representation.

whether representations by insurance agents gave rise to preliminary contracts of insurance were held to be for resolution by the jury.

Of course, these determinations about the scope of Finke's authority to bind Ohio State Life and the terms of his agreement with the Clementses are subordinate to the overarching question of whether he indeed promised them immediate coverage, a question on which directly conflicting evidence has been presented. Ohio State Life was not entitled to summary judgment as a matter of law. Plaintiffs' second assignment of error is well-taken.

Reversed and remanded.

*Judgment accordingly.*

DOAN, P.J., and HILDEBRANDT, J., concur.