OPINION
Defendant Allstate Insurance Co. ("Allstate") appeals from the judgment of the trial court which determined that a policy of automobile insurance issued by Allstate to Nica Farrow required Allstate to provide coverage for a collision involving Farrow's vehicle. For the reasons set forth below, we affirm.
On October 20, 1997, Credit General Insurance Co. ("Credit General") filed this action against Allstate, seeking a declaration of both companies' payment obligations in connection with a collision involving Farrow's vehicle. Credit General alleged that both it and Allstate had insured Farrow's 1995 Mercury Mystique and that this vehicle was involved in a collision on September 8, 1995. Credit General further alleged that Allstate refused to provide defense and indemnification to the personal injury claimants.
Allstate denied that its policy was in effect at the time of the collision because Farrow was not current in payments and because, prior to the collision, Farrow informed Allstate that she had obtained other insurance with Credit General.
Both Allstate and Credit General moved for summary judgment. The undisputed facts indicate that Farrow purchased the Mystique from Mullinax Ford in May 1995. Shortly before accepting delivery of the vehicle, Farrow met with Allstate agent Brady Walker and completed an application for insurance. She paid Walker approximately $200 and received an insurance binder, i.e., temporary automobile insurance.[1] Thereafter, Allstate issued her an automobile liability policy in the amount of $12,500 per person/$25,000 per occurrence.
In relevant part, the Allstate policy provides:
When And Where the Policy Applies
 Your policy applies only during the premium period. During this time, it applies to losses to the auto
from accidents and occurrences within the United States of America * * *.
* * *
Cancellation
 You may cancel this policy by writing us the future date you wish to stop coverage, During the policy period, Allstate may cancel part or all of this policy by mailing notice to you at your last known address. If we cancel because you didn't pay the premium, the date of cancellation will be at least 10 days after the date of mailing the notice. If we
cancel for any other reason within the first 89 days of the policy period, the date of cancellation will be at least 10 days after the date of mailing the notice. Otherwise, we will give you 30 days notice. Proof of mailing the notice will be proof of notice. The effective date and hour of cancellation stated in the notice will become the end of the policy period.
* * *
 We will defend an insured person sued for damages which are covered by this policy, even if the suit is groundless or false. * * *.
* * *
If There is Other Insurance
 * * * If more than one policy applies on a primary basis to an accident involving your insured auto, we
will bear our proportionate share with other collectible liability insurance.
It is undisputed that the Allstate policy does not provide for the automatic termination of insurance with Allstate in the event that the insured obtains insurance for the same loss with another company.
Farrow made additional payments to Allstate through August 1995, but by the first week in September 1995, she completed an application for insurance from Credit General. According to Farrow, the Credit General policy was discounted because the Allstate policy was still in effect.
The Credit General policy also provided for $12,500/$25,000 limits of liability and further indicated that in the event that the insured obtained other insurance for the same loss, Credit General would provide coverage proportionate to the total limits of liability.
Farrow made no further payments on the Allstate policy and informed Walker that she was going to cancel the Allstate policy. It is undisputed that she did not provide written notice of termination of the policy. It is also undisputed that Allstate notified Farrow in writing that the policy was cancelled effective September 24, 1995.
Finally, it is undisputed that Credit General expended $10,789.12 in connection with the payment of the claims arising from the collision of Farrow's vehicle.
On November 20, 1998, the trial court determined that the Allstate policy was in effect at the time of the, collision that Allstate was required to reimburse Credit General $5,394.56, the pro rata share of defense and indemnification costs. Allstate now appeals and assigns two errors for our review.
Allstate's first assignment of error states:
 THE TRIAL COURT ERRONEOUSLY DETERMINED THAT APPELLANT HAD AN APPLICABLE POLICY OF INSURANCE IN EFFECT ON OR ABOUT SEPTEMBER 8, 1995.
Within this assignment of error, Allstate asserts that the trial court erred in determining that the Allstate policy was in effect at the time of the collision because Farrow was delinquent in her payments, there was no mutual assent that the policy should continue to be in effect at that time, and because Farrow had obtained other insurance.
As to procedure, we note that summary judgment is a procedural device used to terminate litigation and must therefore be awarded with caution, resolving all doubts in favor of the party opposing the motion. Osborne v. Lyles (1992), 63 Ohio St.3d 326, 333. In order for summary judgment to be properly rendered, it must be determined that:
 (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from such evidence that reasonable minds can come to but one conclusion and, reviewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. See, also, State ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447,448. If the moving party meets this burden, the non-moving party must then produce evidence pursuant to Civ.R. 56 setting forth specific facts which show that there is a genuine triable issue. State ex rel. Zimmerman v. Tompkins, supra, at 449.
As to the substantive law, it is well-established that the statutory requirements for cancellation of an insurance policy do not apply when the policy is canceled at the request of the insured and within the first ninety days from the time that coverage was in effect under the policy. Lewis v. Motorists Ins.Cos. (1994), 96 Ohio App.3d 575, 582; R.C. 3937.31 (C); Turner v.Progressive Specialty Ins. Co. (1991), 72 Ohio App.3d 381, 385. In the absence of controlling legislation, "the rights of the parties on cancellation of an insurance policy pursuant to its terms are as fixed by the contract as set forth in the policy."Lewis v. Motorists Ins. Cos., supra, at 583. See, also, Gibbonsv. Kelly (1951), 156 Ohio St. 163, paragraph two of the syllabus. Thus, Allstate's claims that Farrow's policy terminated because Farrow was delinquent in her payments and because there was no mutual assent for continuation of the policy must be evaluated with reference to the language of the policy itself.
In relevant part, the Allstate policy provides as follows:
 If we cancel because you didn't pay the premium, the date of cancellation will be at least 10 days after the date of mailing the notice. If we cancel for any other reason within the first 89 days of the policy period, the date of cancellation will be at least 10 days after the date of mailing the notice. Otherwise, we will give you 30 days notice. Proof of mailing the notice will be proof of notice. The effective date and hour of cancellation stated in the notice will become the end of the policy period.
It is undisputed that Farrow did not terminate the policy in writing. It is also undisputed that Allstate's written notice of termination, though undated, indicated that the policy was canceled effective September 24, 1995. Therefore, there was no genuine issue of material fact and the policy had not lapsed for nonpayment of the premium at the time of the collision.
As to Allstate's contention that the policy terminated when Farrow informed Walker that she had obtained other insurance, we note that insurance is a contract and the Allstate policy contains absolutely no language to suggest that coverage terminates in the event that other insurance is obtained. Cf. Stith v. MilwaukeeGuardian Ins. Inc. (1988), 44 Ohio App.3d 147, 148-149; Timock v.Bolz (Oct. 3, 1996), Cuyahoga App. No. 69672, unreported. Further, R.C. 3929.26 states:
 "When there are two or more insurance policies upon the same property, each policy shall contribute to the payment of the whole or of the partial loss in proportion to the amount of insurance mentioned in each policy. In no case shall the insurer be required to pay more than the amount mentioned in its policy."
Therefore, Allstate's contention that its policy terminated because Farrow purchased additional insurance is without merit.
The first assignment of error is without merit.
Allstate's second assignment of error states:
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ORDERED APPELLANT TO PAY A PRO RATA SHARE OF APPELLEE'S ATTORNEY FEES AND COSTS.
Within this assignment of error, Allstate contests the order of the trial court erroneously ordered it to pay a portion of the attorney fees and costs.
The record demonstrates that the trial court ordered Allstate to pay "its pro rata share of defense and indemnification costs." As we have explained in the discussion of Allstate's previous assignment of error, this ruling correctly reflects the fact that the Allstate liability policy was in effect and that the Credit General policy provides that in the event that the insured has obtained other insurance, the Credit General policy is to be applied on a pro rata basis, i.e., in proportion to the limits of the other insurance.
The undisputed evidence of record also indicates that Credit General expended a total of $10,789.12 in connection with the claims arising from the September 8, 1995 collision, $6,500 to arbitrate and settle the claims of the personal injury claimants, and $2,587.56 in attorney fees. Allstate presented absolutely no challenge to this amount. It did not refute the hourly rate or the amount expended. It has therefore waived any claim of error. Cf.State v. Awan (1986), 22 Ohio St.3d 120, 122; Pawlus v. Bartrug
(1996), 109 Ohio App.3d 796, 801 (a party who fails to bring an alleged error to the attention of the trial court at a time when the error may be corrected waives the error on appeal). In any event, the requested fees were fully documented and reflected both reasonable charges and a reasonable rate.
Allstate's second assignment of error is without merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, J., JAMES M. PORTER, J., CONCUR.
 _________________________________ ANN DYKE ADMINISTRATIVE JUDGE
[1] "A binder is an insurance contract which provides present temporary protection to an applicant until the insurer processes his or her application and issues a policy. See, e.g., Clements v.Ohio State Life Ins. Co. (1986), 33 Ohio App.3d 80, 85; Couch on Insurance (3 Ed.1997) 13-2, Section 13:1.